[Crim. No. 572.   In Bank.—September 29, 1899.]

### Ex parte ROBERT S. CLARKE, on Habeas Corpus.

PRODUCTION OF BOOKS AND PAPERS—CONSTITUTIONAL PROTECTION.—The people of the state have a constitutional right "to be secure in their persons, houses, papers, and effects, against unreasonable seizures and searches"; and it is not to be tolerated that a person should be compelled to deliver his private books and papers to another who does not claim any ownership in them, except when warranted by a law clearly not inconsistent with the constitutional provision.

ID.—POWER OF COURT TO ORDER PRODUCTION—DRAG-NET OF INSPECTION—SUSPICION—SHOWING OF MATERIALITY.—The court is bound to protect a party to an action from undue inquisition into his private affairs, and cannot allow a drag-net of inspection to be drawn through all of his books and papers, to discover whether they do or do not contain legal evidence in favor of the opposite party; nor will a mere suspicion that they contain material evidence warrant an order for their production. The court has no power to order the production of books or papers by one party to be used as evidence for the other party, without an affirmative and substantial showing by affidavit, or otherwise, that they contain evidence material to the cause of action or defense of the party requiring them.

ID.—UNLAWFUL ORDER TO PRODUCE BOOKS OF CORPORATION—IMPRISONMENT OF SECRETARY FOR CONTEMPT—HABEAS CORPUS.—No court or judge has power to punish as a contempt the violation or disregard of an unlawful order; and, where the court has made an

unlawful order requiring the secretary of a corporation defendant to produce all of its books, in the absence of any showing that they contain evidence material to the plaintiff's cause, and where the secretary as a witness for the plaintiff has testified to the contrary, an order imprisoning him for contempt for violation of such unlawful order is void, and he is entitled to be released upon *habeas corpus*.

PETITION for a writ of *habeas corpus* in the Supreme Court to release the petitioner from imprisonment for contempt by order of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

J. J. Burt, for Petitioner.

Gordon & Young, for Respondent.

McFARLAND, J.—The petition herein sets forth that while a certain cause entitled *Charles Erickson, doing business under the name of Charles Erickson & Co., plaintiff, v. Stockton & Tuolumne County Railroad Company, a corporation, defendant,* was on trial in the superior court, the petitioner herein was called as a witness for the plaintiff in said cause and testified that he was the secretary of the defendant therein, and had charge of said defendant's books; that the issues in said cause were those presented by the pleadings therein which are attached to and made a part of the petition; that petitioner, as secretary of said defendant, upon notice served by plaintiff, had produced on the trial the minute-book of defendant, which contained all the meetings and proceedings of the board of directors and stockholders of said defendant; that petitioner had testified what other books said defendant had, to wit, a ledger, a journal, a stock ledger, a stock journal, a stock certificate book, and a petty cash-book, and that there was nothing in said books showing that the defendant had anything to do with the grading of a certain roadbed which was the subject of the action; that thereupon the attorney for the plaintiff in said action requested the court to instruct the petitioner herein to bring into court all of said books, and that the said attorney, being asked by the court what he expected to prove by the books, said "that he expected to prove by said books that said corporation had

been engaged in grading said roadbed on its own account," but that "no evidence was offered or introduced, or any showing made in said action, to the effect that any of said books, or any part thereof, were or was material or pertinent to any of the issues in said action"; and that thereupon "said court, as requested aforesaid, instructed your petitioner to produce all of said books in said court." It further appeared from the petition that the petitioner declined to produce said books, and stated that he had been instructed by the directors of said corporation and its president, Mrs. Annie Kline Rickert, not to take any books of said defendant out of its office, and also stated that if plaintiff's attorney would designate what parts of any of said books he desired to introduce in evidence he would give certified copies of such parts as were material or pertinent; and that thereupon the court adjudged the petitioner guilty of contempt for not producing said books, and committed him to the custody of the sheriff of the county, Henry S. Martin, until he should produce said books, and that he is deprived of his liberty by said Martin under said order.

The return to the writ shows substantially the facts set out in the petition, except as to the declared purpose of the attorney of the plaintiff in requiring the books. The commitment, which is part of the return, recites that the attorney for plaintiff moved for the books "for the purpose of proving by said books the general course of business of said defendant corporation, and for the purpose of proving by said books that the said Annie Kline Rickert, president of said defendant corporation, had full power and authority to make contracts for and on behalf of said defendant corporation and as its agent, and for the purpose of further proving who were the stockholders of said defendant corporation at all times since its organization, and more particularly on the fifth day of March, 1898." It merely appears that the counsel for plaintiff "moved for an order"; there was no affidavit upon which the order was founded, nor does anything appear as the foundation of the order except the testimony of Clarke, the petitioner himself, while he was a witness for plaintiff; and his entire testimony is before this court in accordance with the stipulations of the parties that it might be used on the hearing of this writ so far as it could be looked into by this court.

Under the views which we take of the case we do not think it necessary to consider the petitioner's contention that, as the statute requires that the books of the corporation should be kept in its office, the petitioner could not be required to remove them from such office, as was held in *La Farge v. La Farge Fire Ins. Co.*, 14 How. Pr. 26. Neither will we consider whether or not petitioner, as a mere officer of the corporation, could be compelled, as against the orders of the authorities of the corporation, to produce its books in court, nor how a corporation could be proceeded against upon its refusal to produce a document which it ought to produce. For the purposes of this case, we will consider the petitioner as if he were bound to produce the books of the corporation in a proper case, as if he stood in the place of any individual or business firm who was a party to the action, and as if the question were whether a party to an action could be deprived of his liberty for violating such an order as that here presented for consideration.

The question here presented is of great importance to all citizens, for it involves the constitutional right of the people to "be secure in their persons, houses, papers, and effects against unreasonable seizures and searchers." (Const., art. I, sec. 19.) To compel a person to deliver his books and papers to another who does not claim any ownership in them is to violate the sanctity of most important private rights, and is not to be tolerated except when warranted by some law clearly not inconsistent with the constitutional provision. As was said by Lord Camden in the celebrated case of *Entick v. Carrington*, 19 How. St. Tr. 1066, which was an action to recover damages for breaking into a private house and seizing private papers: "Papers are the owner's goods and chattels; they are his dearest property, and are so far from enduring a seizure that they will hardly bear an inspection; and though the eye cannot, by the laws of England, be guilty of a trespass, yet where private papers are removed and carried away, the secret nature of these goods will be an aggravation of the trespass." The privacy of private books and papers is not only of inestimable value to the owner on account of various personal and sentimental reasons, but is of the greatest value also from mere business considerations; the exposure of a man's methods of business would

frequently be highly injurious to him, and, although really solvent, might produce such embarrassments as would ruin him. His right, therefore, to the sole possession and knowledge of his private books and papers is not to be violated, except where the power to do so clearly appears. In many of the states there are statutes on the subject of the production of books and papers in court during a trial and providing in detail under what circumstances orders for their production may be made. In this state about all there is on the subject is to be found in sections 1000 and 1985 of the Code of Civil Procedure. Section 1000 provides for an order, in certain cases, upon notice, that a party to a pending action may have an "inspection" and copy of accounts in any book or of a document or paper "containing evidence relating to the merits of the action or the defense therein," and prescribing a certain penalty for a refusal; and there is a provision at the end of the section that it shall not be construed "to prevent a party from compelling another to produce books, papers, or documents when he is examined as a witness"; but the proceeding in the case at bar was not under that section, and, moreover, it is applicable only to proper cases—for no one would claim that it gives unbridled license for the examination or production of all such private papers as the caprice, or curiosity or ulterior design of a party might suggest. Section 1985 provides for what is usually called a subpoena *duces tecum*, by which a witness is required to bring with him any books, documents, et cetera, "which he is bound by law to produce in evidence"; but the proceedings in the case at bar were not under that section, and, moreover, it does not prescribe what things he is "bound by law to produce." It may be assumed, however, that—although we have no express affirmative statutory provisions on the subject—when a witness is in court, no matter how brought there, and discloses the fact that he has a paper, document, or book which would be evidence in favor of the party desiring it, he may, in a proper case, be rightfully ordered to produce it. But it is evident that we must look to general principles of law applicable to the subject when it is to be determined in what instances a court has the power to compel a witness to give up his books and papers and disclose his private business to the world. And

the question raised here is one of power in the court, and may be inquired into on *habeas corpus*. Indeed, there is no other way in which a party deprived of his liberty as petitioner was could recover his freedom. The same principle applies as when a witness has been imprisoned for contempt for not answering a question not legal or pertinent, and it has been held by this court that in such a case he will be discharged. In *Ex parte Brown*, 97 Cal. 83, the petitioner had been ordered to produce a package of tickets and had been sent to jail for refusing to do so, and this court discharged him on *habeas corpus*, and said that "It is the settled law of this state that no court or judge has power to punish as a contempt the violation or disregard of an unlawful order." In *Ex parte Zeehandelaar*, 71 Cal. 238, the petitioner had been imprisoned for contempt for not answering as a witness a question not legal or pertinent to the issue, and he was discharged on *habeas corpus*. Several concurring opinions were delivered in the case; and it was held not only that the petitioner could not be punished for refusing to answer the question, but that the commitment must show affirmatively that the question was legal and pertinent to the issue. (See, also, *Ex parte Rowe*, 7 Cal. 181.) And a witness can no more be lawfully imprisoned for refusing to produce papers and books which he cannot be legally required to produce, than he can be for refusing to answer questions not proper to be asked.

In the case at bar, we are satisfied that the order in question was unauthorized. There was no showing by affidavit or otherwise that the books in question contained any evidence material to plaintiff's cause; the only evidence on the point was the testimony of petitioner when on the witness stand as plaintiff's own witness, and that showed that they did not contain such evidence. In *Morrison v. Sturges*, 26 How. Pr. 179, the court say: "It is not enough that the party believes or is advised that the paper contains material evidence. Facts must be shown to support such belief." Moreover, it was in effect a general omnibus order for the production of all defendant's books, which has always been held to be unauthorized; for, while it named certain books, yet those constituted all of defendant's books, as appears from plaintiff's examination of petitioner as

to what books the defendant had. Again, the order was in the nature of what Lord Chancellor Hardwicke, over a century ago, called "a mere fishing bill," and such bills have been universally condemned. It is quite evident that these books were not required to be produced for the direct purpose of introducing them in evidence. Plaintiff would not have offered them or any part of them in evidence unless he found something in the part offered that was relevant and material in support of his side of the case; and, indeed, they would not have been otherwise admissible. He merely intended to draw his drag-net of inspection through all these books under the ostensible motive of trying to catch something which his witness had testified was not there. In the meantime, all the private business of the defendant—all its dealings with persons other than plaintiff, its methods of conducting its affairs, perhaps its financial condition and other matters vitally important to its welfare— would have been exposed. There is no warrant in the law for such a forcible wholesale violation of a person's privacy upon such a showing as was made in this case. A man does not lose all his civil rights because he is brought into court as a party to a suit. As was said by Lord Hatherley: "A court is bound to protect the defendant against undue inquisition into its affairs" (L. R. 7 Ch. App. 97, and notes); and it would be difficult to imagine a more striking instance of such "undue inquisition" than an order compelling a defendant to produce for inspection all his books upon the mere suspicion—against positive evidence to the contrary—that they might possibly contain some evidence favorable to the plaintiff, and without pointing to any particular part of all these books over which this suspicion was supposed to hover.

The authorities on the subject are innumerable. Many of them arose out of discussions of the old "bill of discovery," and many out of later statutory provisions; but the principles which they declare are clearly to the point that such an order as is here under review is unauthorized. Originally, an order for the production of a paper, document, or book was made only when the document was one declared on in the bill or set up as a defense; or where the party asking for it had an interest in the document itself—as where it was a contract between

the parties, and there was only one copy of it which was in the hands of the opposite party; or where the instrument was, in the very nature of things, material evidence, as where it was alleged to have been forged or altered, and that it would on its face show the fact alleged; or where books belonged to both parties and would necessarily contain evidence of the issues pending—as in case of a suit between partners, or generally between principal and agent or trustee and beneficiary. (See 2 Phillips on Evidence, Cowen & Hill's and Edwards' notes, c. IV, *321, and notes.) Afterward, such orders were undoubtedly extended so as to include other grounds for production of papers, and were in many states, as hereinbefore noticed, regulated by statutes and rules of court; but the principles applicable generally to the forced production of papers are declared in the authorities as above stated, and we have been referred to no case warranting such an order as the one now under review. The subject, in all its bearings, both at common law and under recent statutes, is fully discussed in 2 Wait's Practice, commencing at page 522, where a very large number of authorities touching the question are cited. Many cases are there cited to the point that there must be a substantial showing that the document or book sought for contains material evidence in support of the cause of action, or defense, of the party asking for it; and that such a mere suspicion as appeared in the case at bar will not warrant an order for the production. But the principle which is determinative of the invalidity of the order involved in the case at bar is stated on page 533, where the author says: "The right given by statute to discover books, papers, and documents relating to the merits of a pending action does not entitle a party to enter into a mere fishing examination of all the books, papers, and documents of his adversary. An inquisitorial examination was not contemplated by the framers of the statute." (Citing authorities.) In *Hoyt v. American Exchange Bank,* 8 How. Pr. 93, the court said: "He has no right to have a general inquisitorial examination of all the books, papers, and documents of his adversary with a view to ascertain if, perchance, something cannot be found which will probably aid him." There are numerous other authorities to the same point.

In the case at bar, if we were to confine ourselves entirely to the commitment itself, the conclusion above stated would be the same. It was recited there that the plaintiff moved for the books for the purpose of proving by them "the general course of business of said defendant corporation"; and this is as complete an expression of an intent to go upon a general fishing expedition as could possibly be imagined. Another recital is, that the books were wanted for the "purpose of proving" that Mrs. Rickert had "full power and authority to make contracts for and on behalf of said defendant corporation as its agent"; but there is no evidence that the books sought for would have afforded any evidence of that kind, and plaintiff had already introduced from the minute-book a resolution of the board of directors to that effect; and, moreover, the averment of the complaint was that the defendant in the case held out Mrs. Rickert as their "ostensible agent." The other recital was that plaintiff wanted the books for the purpose of proving "who were the stockholders of said defendant corporation at all times since its organization, and more particularly on the fifth day of March, 1898"; but the suit was against the corporation and not against the stockholders, and it was immaterial who the stockholders were, and it was unimportant to plaintiff to know who the stockholders were unless they desired the information for the purpose of a future suit, which is in no case allowable. Moreover, the order is not confined to the stock-book.

For the reasons above stated we are of the opinion that the order for the violation of which the petitioner was imprisoned was void, and that therefore he should be discharged from custody. This conclusion is based entirely upon the order here reviewed. Under what circumstances a proper and authorized order could be made for the inspection, or for the production at the trial, of a paper, document or book, is a question not now before us.

The petitioner is discharged.

Van Dyke, J., Temple, J., Henshaw, J., and Harrison, J., concurred.