## EX PARTE LE HARDY.

APPEAL from a decision rendered by Mr. Justice MacLeary denying a petition for a writ of *habeas corpus*.

No. 381.—Decided October 24, 1911.

CONTEMPT—DISOBEDIENCE OF ILLEGAL ORDER.—An illegal order of a court made without or in excess of its jurisdiction does not have to be obeyed and disobedience thereof is not punishable for contempt, because in order to commit a contempt a wilful disobedience of a legal order issued within jurisdiction concerning the matter in litigation and the parties to the proceedings is necessary.

JURISDICTION—ESSENTIAL REQUISITES.—In order that jurisdiction may exist three essential requisites are necessary: First, that the court be empowered to take cognizance of the class of cases to which the one to be adjudged belongs; second, that the proper parties present themselves or be brought into court in the manner and form established by law; and, third, that the point decided upon must be, in substance and effect, within the issue.

PATRIA POTESTAS—LIMITATION OF SUSPENSION OF PATRIA POTESTAS—JURISDICTION OF DISTRICT COURTS.—By operation of law district courts have jurisdiction to take cognizance of actions wherein the controversy is whether the *patria potestas* of a father should be limited or suspended.

ID.—POSSESSION OF CHILDREN—MAINTENANCE OF STATUS QUO DURING LITIGA-
TION.—A district court trying a suit brought by the father against the grand-
mother of his children seeking to take from her the possession had by her
of such children at the time the suit was begun has power to maintain
during the suit the *status quo* existing at the time the suit was begun, and
can therefore require the father to visit his children only during certain
hours of the week and to return them to the possession of the grandmother
upon the expiration of that time, and a wilful disobedience of that order
by the father in refusing to return the children and keeping them in his
possession after having been required to deliver them to the marshal of
the court, constitutes contempt of court.

HABEAS CORPUS—REVIEW OF DECISIONS.—In *habeas corpus* proceedings the only
question that may be considered is whether or not the court had jurisdic-
tion to make the order which had been disobeyed, but the legality or illegality
of the decision can only be reviewed on appeal or by *certiorari*.

JUDICIAL PROCEEDINGS—PRESUMPTION OF REGULARITY.—Unless the contrary is
shown, in judicial proceedings the presumption is always in favor of their
regularity.

The facts are stated in the opinion.

*Mr. Rafael López Landrón* for petitioner and appellant.

*Mr. Jesús M. Rossy,* prosecuting attorney, for The People.

MR. JUSTICE ALDREY delivered the opinion of the court.

On July 23, 1910, Leon P. Le Hardy filed a complaint in
the District Court of San Juan, Section 2, against Juana
Acosta, widow of Meltz, in which he alleged in substance that
he had been married to Hilda Meltz Acosta, who, at her death,
left two children named Phillipe and Hilda, four and three
years old respectively; that the death of his wife having
occurred while he was absent from this Island, upon his
return he left his children in the care of their grandmother,
the defendant herein, but that since the latter part of the
month preceding that in which the complaint was filed the de-
fendant has refused to allow the plaintiff to take the children
back and keep them in his company, wherefore he prayed the
court to declare that the said children, being his legitimate
minor children are under his *patria potestas,* owe him obed-
ience and should live with him, and to order Juana Acosta,
widow of Meltz, to return and deliver the said children
to him.

With this complaint the plaintiff also filed a petition to

secure the effectiveness of whatever judgment might in time be rendered, praying therein that the defendant be enjoined from refusing to deliver said children to their father.

This petition having been denied, the plaintiff applied to this court for a writ of *certiorari,* and on October 24 of the same year this court reversed the decision of the lower court and ordered it to adopt such measures as would secure the return of the children in case the plaintiff father should obtain a final judgment in his favor.

As a consequence of this order Juana Acosta appeared before the district court trying the case, and after stating that she was ready to comply with such judgment as might be rendered in the case, even if adverse to her, offered to furnish such bond as the court might fix to secure the return of the children to the plaintiff should a judgment be rendered in his favor; and it appears that on the day following the filing of this offer the court fixed the amount of the bond at $1,000.

Some days later, or on November 9, the plaintiff filed a motion in said court wherein, after setting forth that the Supreme Court had directed that in order to secure the effectiveness of the judgment which might be rendered, the district court should proceed to entrust said children to the custody of the defendant, their grandmother, under a bond sufficient to guarantee their return to the plaintiff if so adjudged, or, after hearing him, to adopt measures adequate to the circumstances. He then proposed and requested the court: First. That, until otherwise decided, the children should remain with and in the care of their grandmother upon her giving a bond of $1,000. Second. That the plaintiff be allowed to visit his children, take them to his house or out for recreation on Sundays and holidays, and to have such other intercourse with them as may be in keeping with the trust in which they have been placed. Third. That if the plan proposed should not meet with the approval of the grandmother, a third party be appointed to have custody of the children according to the above terms.

As a consequence of this motion and of another filed by the defendant objecting thereto, but informing the court that she had already given the required bond of $1,000, the court rendered a decision on November 22, 1910, directing the parties to come to an understanding to the effect that on one day of each week the children should be at the disposal of the plaintiff and under his custody for six consecutive hours thereof, during which time he may take them to his home, but that any attempt on the part of the plaintiff to keep them and not return them to the defendant at the end of the six hours would be considered by the court as a grave contempt.

The parties not being able to agree upon the days and hours for this arrangement, the court, at the request of the plaintiff, set Sundays from 10 a. m. to 4 p. m.

The case continuing its course, the defendant filed an answer with a cross-complaint praying that in pursuance of the provisions of section 236 of the Civil Code the plaintiff be deprived of his *patria potestas* or suspended in the exercise thereof.

It is a fact not controverted by the parties that after the order last mentioned and in pursuance thereof the plaintiff had been having his children in his company, during the days and hours fixed, until Sunday July 30 of the present year, when the plaintiff, who had taken out of the house of the defendant only the child Philippe, the other being somewhat ill, and did not return the former to the grandmother on that day nor had returned him on the following day, when she reported the fact to the district court and petitioned it to take the necessary measures so that the order of the court should be obeyed, that the child be returned to her, and that the court take such further steps as might be called for by the offense committed.

In view of that motion, which was sworn to, the court on the same day ordered the marshal to notify the plaintiff to return the child, Philippe Le Hardy y Meltz, to Juana Acosta

at once, and also to appear and show cause why he should not be punished for contempt.

It appears from the return of the marshal, which was dated the same day, that to his demand upon the plaintiff for the return of the child, the latter replied that he would not give up the boy Philippe and that only by force could the child be taken away from him.

When this fact was reported to the court it made an order under date of July 31 directing the marshal to take the child immediately and deliver him to the defendant, and to notify the plaintiff that, having disobeyed the order of the court, he was summoned to appear in court on the second day of the following month of August and show cause why he should not be punished for contempt. In compliance with this order the child was delivered by Le Hardy to the marshal, who in turn delivered him to the grandmother.

On August 2 last, the District Court of San Juan, Section 2, Leon P. Le Hardy and his counsel being present, condemned the former to 15 days' imprisonment and to pay a fine of $100 and costs for contempt, consisting in his having retained in his possession the child Philippe Le Hardy y Meltz for a longer period than that fixed in the order of December 10, 1910, and in refusing to comply with the order of July 31, 1911, whereby he was directed to deliver the child he had in his custody.

Having been arrested to serve the sentence imposed upon him, Leon P. Le Hardy presented a petition for a writ of *habeas corpus* to one of the Justices of the Supreme Court praying for his liberation on the ground that his arrest was illegal because the district court had exceeded its jurisdiction, inasmuch as it had no power to deprive him of his *patria potestas* over his minor children except by virtue of a final judgment, in accordance with sections 235 and 236 of the Civil Code.

This petition having been duly considered after being argued at length on August 9 last, was denied, and the court

further ordered that the petitioner be remanded to the custody of the marshal of the District Court of San Juan.

From this order the present appeal has been taken.

From the facts above set forth it is clear that the petitioner did not consider himself bound to comply with and obey the order of the District Court of San Juan ordering that his children be placed in the custody of the grandmother and restricting him from keeping them in his company for more than six hours on Sundays, and, therefore, that disobedience thereof not constituting contempt a judgment against him for contempt for failure to comply with such orders is illegal.

It is true that an order of a court which is illegal because it was made without or in excess of its jurisdiction does not have to be obeyed and that disobedience thereof is not punishable as contempt, as already held by this court in *certiorari* proceedings in the case of *Núñez* v. *Soto, District Judge* (14 P. R. R., 190), because contempt of court consists of a wilful disobediance of a lawful order issued by a court having jurisdiction over the matter in litigation and of the parties litigant. (*Tomsky* v. *San Francisco Superior Court*, 131 Cal., 620, 63 Pac., 1020; *Ex parte Clark*, 126 Cal., 235; *Ex parte Truman*, 124 Cal., 387; *Ex parte . Widber*, 91 Cal., 367.)

Therefore, in accordance with this principle, the question at issue in the case at bar is whether the aforesaid orders of the District Court of San Juan were made without jurisdiction and are, therefore, illegal. The fact that they were wilfully disobeyed by Leon P. Le Hardy is not open to discussion.

Jurisdiction has been defined as:

"* * * the power and authority constitutionally conferred upon (or constitutionally recognized as existing in) a court or judge to pronounce the sentence of the law, or to award the remedies provided by law upon a state of facts, proved or admitted, referred to the tribunal for decision, and authorized by the law to be the subject

of investigation or action by that tribunal, and in favor of or against persons (or *a res*) who present themselves or who are brought before the court in some manner sanctioned by law as proper and sufficient. (1 Black on Judgments, § 215.)

"From this definition of jurisdiction it follows that to constitute the same there are three essentials: First, the court must have cognizance of the class of cases to which the one to be adjudged belongs. Second, the proper parties must be present. And third, the point decided upon must be, in substance and effect, within the issue." (1 Black on Judgments, § 242; 2 Bouvier's Law Dict., 57.)

And the court, acting with jurisdiction, also has power to compel obedience to its judgments, orders and processes. (Code of Civil Procedure, sec. 7, par. 4.)

There is no doubt that the District Court of San Juan, Section 2, had jurisdiction to take cognizance of the action wherein the orders disobeyed were made, because said court is authorized by law to take cognizance of the subject matter thereof, i. e., to determine the person to whom the guardianship and care of the children, Philippe and Hilda, belongs, and whether the *patria potestas* of their father should be restricted or suspended it also had jurisdiction over the petitioner inasmuch as he appeared before that court requesting it to decide his controversy with the grandmother of these minors and to compel her to return them to him.

These two requisites of jurisdiction have not been denied by the petitioner who only denies that the court had jurisdiction to make the two orders above mentioned, contending that they are illegal because the institution of the action did not vest the court with power to deprive the petitioner of his *patria potestas* over his minor children by an order, but only by a judgment and in the cases specified in the Civil Code.

We must not lose sight of the nature of the action brought by Le Hardy and of the facts which gave rise thereto because they are of the highest importance in this case.

The complaint sets forth that the children of the plaintiff, Le Hardy, were in the possession of the grandmother,

and that as he considered that he alone had the right to keep the children in order to exercise the rights conferred and perform the obligations imposed upon him by the *patria potestas,* he prayed the court that in accordance with said rights and obligations the defendant grandmother be ordered to return the children to him.

There existed, therefore, a state of facts—the lawful or unlawful keeping of the children by the grandmother—which could not alter the nature of the action brought by the plaintiff and which had to continue until the question raised in the complaint was decided by a final judgment.

The mere institution of an ordinary civil action does not produce the effect of altering the facts existing at the time it was instituted, for that would be anticipating a judgment in favor of the plaintiff, and all that he is entitled to is that the condition remain in *statu quo* during the pendency of the action, and to be guaranteed that a judgment in his favor will be effective.

That such is the case was admitted by the petitioner himself when he applied for an order to secure the effectiveness of the judgment which might be rendered in his favor, and it was so declared by this court when in deciding the *certiorari* proceedings instituted by Le Hardy it ordered the court below to adopt such measures as would secure the effectiveness of the judgment, suggesting in its opinion that the same might consist in the giving of a bond by the defendant, or in any other manner which would insure compliance with the judgment in the event of its being favorable to the plaintiff.

Prior to this decision of the Supreme Court, and with greater reason after the same, the court below could take such measures as were necessary to maintain the *status quo* during the suit, and also to secure the effectiveness of the judgment.

Therefore the third requisite, i. e., that the point decided be within the issue between the parties, also exists, and therefore the district court acted with jurisdiction.

The orders disobeyed did not deprive the father of the *patria potestas* over his children, as the petitioner contends, but only maintained the situation existing between the parties at the time the suit was filed. They did not deprive the petitioner of his *patria potestas* nor suspend him from the exercise thereof, but simply left the children in *statu quo* until final judgment should be rendered.

An order of that nature does not affect any rights whatever.

The orders referred to being material to the controversy between the parties and, therefore, within the jurisdiction of the court, and not having been attacked either by appeal or *certiorari,* which are the only means of reviewing their legality, they must remain in force and be complied with, for in *habeas corpus* proceedings we can examine only as to whether they were made within jurisdiction, and *habeas corpus* proceedings cannot be substituted for said proper remedies. (See 1 Black on Judgments, 2 ed. §§ 254–256.)

It is argued by the petitioner that considering the wording of the order to secure the effectiveness of the judgment and its correlative orders, the court below lacked the power to enforce it without a surety bond, and that this had neither been given nor approved because the same did not appear in the records.

From the facts set forth at the beginning of this opinion and upon an examination of the transcript of this appeal, it appears that the defendant requested the court to fix the amount of the bond which she was willing to furnish; that the amount was fixed at $1,000, the sum that the petitioner asked the court to fix; and that as the children remained in possession of the defendant we must presume that the bond was given, because it is our duty to presume the regularity of the proceedings unless the contrary is shown and nothing appears in the record to show that the bond was not given. The fact that the bond is not a part of the record does not show conclusively that as a matter of fact it was not given.

Moreover, even assuming that the defendant failed to furnish the bond, the plaintiff-petitioner would then be entitled to ask that it be given, or that in consequence of such omission the court adopt some pertinent measure, but not to disobey the order.

We see nothing that would excuse the disobedience of Leon P. Le Hardy and, therefore, the decision appealed from should be affirmed.

*Affirmed.*

Chief Justice Hernández and Justices Wolf and del Toro concurred.

Mr. Justice MacLeary did not take part in the decision of this case.