[Civ. No. 7477. Second Appellate District, Division Two.—October 17, 1930.]

SHELL OIL COMPANY (a Corporation), Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

McCutchen, Olney, Mannon & Greene for Petitioner.

J. Edward Johnson and Chas. Mitschrich for Respondents.

SCHMIDT, J., *pro tem.*—In an action pending in the Superior Court of the State of California, in and for the County of Los Angeles, Josephine Cook, as plaintiff by her second amended complaint against Shell Oil Company, alleged that she was the owner of certain fractional royalty units under a certain oil and gas lease known as the Shell-Coseboom-Dabney Lease, a copy of which was attached to the complaint; that there were certain breaches of covenants, express and implied, under said lease by the Shell Oil Company, petitioner herein, and by which action she claimed damages in a large amount. Subsequent to the filing of answer by the defendant herein, and pursuant to section 1000 of the Code of Civil Procedure, the plaintiff made her motion before the respondent court for an order of inspection and copy of records alleged to be in the possession or under the control of petitioner, and upon the hearing of said motion the respondent court granted same and made its written "order to permit inspection and right to copy certain records and documents" whereby it ordered petitioner, the Shell Oil Company, to "give to the plaintiff and/or her attorneys . . . an inspection and permission to take copies of each and all the following described records and/or documents in possession of and/or under control of said defendant Shell Oil Company containing the information specified in said notice of motion for order for inspection and copy, to-wit:

"1. The location records showing the precise location in distance in terms of feet from the boundaries of the tract of land on which were located and drilled the following described oil and/or gas wells, to-wit:

"(a) wells numbered 1–9, inclusive, located on" (here follows description of the two ten-acre pieces in which plaintiff claimed her unit interests and more than 40 additional wells described in a similar manner, all of which additional

wells were on property other than the twenty acres covered by said lease).

"The evidence desired by plaintiff to be obtained from said records on each of the hereinabove described oil and/or gas wells is: "The precise location and distance in terms of feet and direction from the nearest boundary line of said Shell-Coseboom-Dabney Lease, and the precise location in terms of feet and direction from each of the two nearest boundary lines of the particular lease upon which each of said wells is located.

"2. The drilling records of each and all the foregoing oil and/or gas wells as to each of said wells:

"(a) The date actual drilling commenced;

"(b) The date of first completion;

"(c) The date first placed on production;

"(d) The depth in terms of feet when completed;

"(e) The depth in terms of feet at which each string of casing is set;

"(f) The size and length of such casing;

"(g) The length in terms of feet of perforated casing;

"(h) The depth in terms of feet from the surface of the land to the bottom of such perforated casing;

"(i) The depth in terms of feet from the surface of the land to the point where each oil and/or gas bearing strata was encountered both in the original drilling and/or in deepening;

"(j) The thickness in terms of feet of each oil and/or gas bearing strata encountered and/or penetrated:

"(k) The depth in terms of feet of open hold below the bottom of the deepest casing set;

"(l) The date at which actual drilling to deepen a well commenced;

"(m) The depth in terms of feet at which completed after redrilling or deepening;

"(n) The depth and/or thickness in terms of feet of each oil and/or gas bearing strata from which oil and/or gas has been produced or is now being produced;

"(o) The dates between which any and/or all of said wells were off production and the reason why said well was off production during such period.

"3. The production records on which is recorded the daily, weekly and monthly production of each and/or all said wells showing among other things:

"(a) The quantity of oil in terms of barrels and/or of gas in terms of cubic feet produced each day and/or each week and each month from each and/or all said wells from the time that the same began producing oil or gas to date hereof;

"(b) The specific gravity of the oil produced each day from each oil bearing strata penetrated by such well from which production was taken;

"(c) The monthly market price in terms of dollars per barrel of oil and in terms of dollars per thousand cubic feet of gas on which royalties were based which have been paid by the defendant to the owner of the fee or of the royalties from the production of each well;

"(d) The period for which said wells or any of them were off production and the reason therefor.

"4. The tracings and/or blue prints containing a chart showing the formation and/or structure penetrated in each such well during the drilling thereof from its commencement to its completion.

"5. The record of each and every survey and/or acid bottle test made on any and/or all of the above designated wells.

"6. The complete drilling log of each of said above designated wells.

"7. The lease and/or drilling contract and/or contract for the purchase of production under and/or by virtue of which the said defendant, Shell Oil Company, drilled and/or operated and/or is operating the wells on the following described tracts of land, to-wit: (here are enumerated eight leases).

"Also each and every contract and/or agreement which the defendant has heretofore made concerning the payment of royalties and/or the sale of production from each and every of said wells hereinbefore described."

By its petition to this court the Shell Oil Company is seeking to restrain the respondent court from enforcing in any manner whatsoever the aforementioned order, claiming that the respondent court, under the facts in this case, was without jurisdiction to make the order.

Without doubt, section 1000 of the Code of Civil Procedure, affords the trial court judicial discretion in passing upon any application made for inspection of books and records. We must indulge all intendments in favor of the

validity of the order of the trial court and the action of the trial court being discretionary, the writ here asked cannot issue unless the action of the trial court amounts to an abuse of discretion. (*Maclay Rancho* v. *Superior Court,* 81 Cal. App. 471 [254 Pac. 287].)

The question presented involves the constitutional right of the people to ''be secure in their . . . papers and effects against unreasonable seizures and searches'' (Const., art. I, sec. 19).

As was said in *Kullman* v. *Superior Court,* 15 Cal. App. 276, at page 285 [114 Pac. 589, 593] : ''The right of the people to be secure against unreasonable or unnecessary seizure of their private papers and documents is justly regarded as a highly sacred one—so much so, in fact, that the people themselves have taken the pains in express written terms to guarantee and safeguard its perfect enjoyment. (Const., art. I, sec. 19.) In no case, therefore, should a person be forced to surrender his private books and papers to another who does not claim to own or have any interest in them, except upon convincing proof that such books or papers contain evidence which materially affects the rights in litigation of the person demanding them.'' (Citing and quoting from *Ex parte Clarke,* 126 Cal. 238 [77 Am. St. Rep. 176, 46 L. R. A. 835, 58 Pac. 546].)

 As a condition precedent to support such an order of inspection there must be shown, by clear and unequivocal proof, two essential facts:

(1) That the precise book, paper or document containing the evidence material to the issue be described or designated so that it may be readily recognized; and

(2) That such book, paper or document contains evidence material to the issue to be tried by the court. Such evidence must be competent evidence, not hearsay.

Again quoting from *Kullman* v. *Superior Court,* 15 Cal. App. 276, at page 286 [114 Pac. 589, 593], it is said: ''Nor is it enough, as is said in *Morrison* v. *Sturges,* 26 How. Pr. (N. Y.) 179, 'that the party believes or is advised that the paper contains material evidence. Facts must be shown to support it.' '' The Kullman case was approved in *Funkenstein* v. *Superior Court,* 23 Cal. App. 663, and at page 667 [139 Pac. 101, 103]' we find this significant language:

''If any of such books, papers or documents so made, issued or taken would be admissible upon any theory of the case

it was the duty of the affiant to set forth the facts and reasons showing wherein their materiality and admissibility consist; and it was not sufficient in his affidavit to merely rely upon the legal conclusion, stated in general terms, that such books, papers and documents would be material.

"Finally, the entire failure of the affiant to identify with any particularity of description any specific book or paper or document constitutes, in our opinion, a fatal objection to the jurisdiction of the trial court to make the order in question." See, also, *Pyper* v. *Jennings,* 47 Cal. App. 623 [191 Pac. 565]; *People* v. *Nields,* 70 Cal. App. 191 [232 Pac. 985]; *Commercial Bank* v. *Superior Court,* 192 Cal. 395 [220 Pac. 422].

The record in this case stands uncontradicted that: (1) written demand was made upon plaintiff and her attorneys for a bill of particulars specifying in detail the precise respects in which petitioner was supposed to be in default under its lease, including a statement of the wells it was supposed to have failed to offset and a statement of the wells it was supposed to have completed under the leased premises. A bill of particulars was not forthcoming; several months later petitioner made a motion in respondent court for an order directing plaintiff to furnish a bill of particulars substantially in accord with the original demand, in response to which plaintiff filed an affidavit with the court, stating that she had no knowledge of the particulars demanded and that she would need an inspection of petitioner's records before she could give the bill of particulars; the motion was denied; and (2) in her deposition taken prior to the hearing resulting in the order plaintiff admitted she had no knowledge of any facts in connection with the wells mentioned in her complaint; that she had verified her complaint on the "say so" of her husband. Likewise her husband in his deposition admitted he did not have any knowledge of the facts involved in the allegations charged in the complaint.

In support of the motion for the order plaintiff below presented to the respondent court the affidavits of J. Edw. Johnson and Chas. Mitschrich, each of whom is counsel for plaintiff. The one affidavit of J. Edw. Johnson states "that said plaintiff's demand for an inspection of records . . . is only for the purpose of obtaining specific

evidence which affiant knows to exist and which has a material bearing on the issues and which affiant knows to be in the possession of said defendant; that said demand for an inspection . . . is not a 'fishing expedition.' '' In another affidavit he states ''that each and all of the said records, . . . specified in said notice . . . are material to the proper presentation of plaintiff's case and are in the possession or under the control of said defendant and cannot be procured elsewhere.'' These statements of the affiant are mere conclusions, and under the decisions hereinbefore referred to could not confer any jurisdiction on respondent court.

Two affidavits were filed by Charles Mitschrich, one dated May 26, 1930, and the other June 12, 1930, which second affidavit substantially includes all that is in the first affidavit; we shall treat the two as one affidavit. The affidavit alleges, among other things:

''That affiant has been engaged in the actual practice of law since April 2, 1889, and that approximately twenty-five years of his practice has been to a large extent in connection with litigation connected with the oil and gas industry, and that affiant knows from personal experience that every successful oil operator in the regular course of his business makes and preserves records of all drilling operations and of the daily, weekly, monthly and yearly production of each and every well drilled and/or operated by it or him; and that the said defendant has in the regular course of its business made and preserved such records concerning each and every oil and/or gas well drilled and/or operated by it and particularly those certain oil and/or gas wells named and described in said written 'Demand for Inspection and Copy'; that said records so made and preserved by said defendant contain all of the information requested, set forth and described in said 'Demand for Inspection and Copy'; that all of said records and documents and the information contained therein are accurate, relevant, material, and essential to the proper presentation of this action and are admissible in evidence upon the trial thereof as is more fully hereinafter set out; that said records and the information contained therein and an inspection thereof by plaintiff are necessary to enable plaintiff to present her case to the court and that said information is not in the possession of plaintiff nor her attorneys and cannot be obtained by plaintiff elsewhere than from the said records of defendant.''

(Here follows mention of the more than fifty gas wells hereinbefore in this opinion referred to, followed by the words):

"That all of the oil and/or gas wells located on said lands were drilled and are owned and/or operated by said defendant and so near to the boundaries of said Shell-Coseboom-Dabney Lease as to drain and that they do drain oil and/or gas from beneath said demised land leased to defendant by said Shell-Dabney-Coseboom Lease.

"That the said Location Records demanded from said defendant will show the exact location of each of said oil and/or gas wells in relation to the boundaries of said demised premises and are material, relevant and necessary to show and will show that said wells are located so near to the demised land as to drain and that the same do drain oil and gas from beneath the said demised premises, and that the Court can ascertain therefrom that the same do drain oil and/or gas from beneath the demised premises.

"That the said 'Drilling Records' and 'Tracings' and/or 'Blue Prints' demanded from said defendant will show all of the information as set forth in . . . said written demand . . . and are material and relevant and admissible in evidence to show and do show the manner and *diligence or lack of diligence* with which the demised land was explored and developed for oil and gas; the particular sand or sands from which each of said wells have produced and are now producing oil and/or gas; the thickness of each particular oil and/or gas sand encountered . . . the size of the casing used in each well; the amount and exact location of perforated casing in each of said wells and the other information set forth in said demand, all of which is necessary and material to show and will show, and therefrom the court can determine *whether or not* the said wells on the said adjacent and nearby lands which were drilled and are owned and/or operated by said defendant are properly *or at all* offset by any well or wells on the said demised premises and to determine *whether or not* said demised premises were properly and adequately explored for gas and/or oil and *whether or not* wells drilled, owned and operated on surrounding land by defendant company have drained and/or do drain oil and/or gas from beneath the demised premises, and that each and all of said records are admissible as evi-

dence *tending to prove* the truth of the allegation in plaintiff's complaint.

"The said 'Production Records' demanded from said defendant will show the quantity of oil . . . produced . . . and the period during which same was so produced; the quality of the oil . . . price obtained . . . and the royalties . . . paid; that said records are necessary and material to show and do show the quantity of oil and gas produced . . . and it can be determined therefrom and the same will *tend to* prove how much of it *if any* produced from wells on the adjacent or nearby lands was drained from beneath the said demised premises, and will enable the court or jury to compute . . . the amount of damage *if any* to which plaintiff is entitled by reason of said drainage and that the same are admissible in evidence *as tending to prove* the truth of the allegations of plaintiff's complaint herein.

"That the said Tracing and/or Blue Prints demanded . . . will show the cross-section of each formation . . . penetrated . . . and the same are proper, necessary and material and admissible in evidence to prove the character of formations penetrated . . . the exact location of the strata . . . the length of time necessary to drain said wells . . . and *whether or not* production was or is now being taken from each sand or which particular sand from which it was and/or is taken and by comparison will *tend to prove* that defendant has neglected to protect the demised premises from drainage." . . .

"The Record of each survey and/or acid bottle test . . . will show the general course and direction taken by the drill in the drilling of each of said wells and will show *whether or not* said hole or well is straight and if not straight the degree of deflection and the direction in which it veered from the point at which it entered the surface of the ground and the distance, and is necessary and material and admissible in evidence in this cause as *tending to show* and will show *whether or not* any one or more of said wells located on adjacent or nearby premises . . . are in fact completed . . . at a point underneath the said demised premises and in fact draining oil directly from beneath said demised premises, and to aid the court or jury to determine that fact.

"The 'Drilling Log' of each of said wells . . . will and does show a complete history of each well . . . and in addition to the information contained in the drilling record will

and does *tend to prove* and to show what *if any* delays there were in drilling the same; the cause of the delay; the length of the delay . . . *whether or not* delays in drilling were necessary or due to negligence or carelessness and are admissible in evidence to aid the court in determining *whether or not* diligence was used . . . and *whether or not* delays in drilling on the wells in the demised lands were intentional or unavoidable by the use of due skill and diligence, and by comparison with the logs of wells drilled by the defendant on adjacent lands will show whether defendant purposely *or otherwise* delayed the drilling of the wells drilled by it on the demised lands and are admissible in evidence as *tending to prove* the truth of the allegations in plaintiff's complaint.

"That the documents . . . contain evidence relative to the merits of this action which is material, relevant and competent and admissible in evidence in the trial of this cause in that such documents specify and prove among other things, the amount of royalties which defendant company agreed to pay to the respective owners of the lands surrounding and adjacent to the demised lands and affiant *is informed and believes* they will disclose that in some instances the royalties which defendant company agreed to pay . . . produced by it through wells on such adjacent and/or surrounding lands were less than those which defendant agreed to pay . . . on the demised land and will *tend to prove* that one of the motives of defendant in neglecting and failing to drill offset wells on the demised premises . . . was to secure as much as possible of the oil and/or gas from beneath the demised premises through such surrounding wells for a less royalty than that it agreed to pay . . . on the demised premises and to avoid the payment to the lessors of the demised premises and their assigns of the royalties it would otherwise have been compelled to pay therein; and will *tend to show* that defendant's contention that it has properly offset surrounding wells is not made in good faith and *tends to prove* the truth of the allegations in plaintiff's complaint, that defendant has wilfully and negligently failed to drill offset wells on the demised premises. . . .

"That the drilling records, location records, production records, tracings and blue prints above described and drilling log are all records which the defendant made in the usual

course of business and taken together contain accurate evidence showing that defendant has during all of the times mentioned in the complaint drained, and still continues to drain oil and gas from beneath the demised premises through the wells . . . on adjacent premises and that it has failed and neglected to offset the same on the demised premises and are admissible in evidence and will *tend to prove* that offset wells could have been profitably drilled and operated and should have been drilled and operated by defendant on the demised premises within a reasonable time after producing wells were brought in by defendant in surrounding lands for the mutual advantage of both parties hereto and that the same has not been done within a reasonable time or at all.

"That the record of surveys of its wells in adjacent lands contains evidence that some of such wells were completed under the demised premises and that the production therefrom is at a point under the same notwithstanding the top of such wells is on other lands, and the same is admissible in evidence as *tending to prove* and will prove *whether or not* defendant has produced and/or is producing oil and/or gas from underneath the demised lands through wells which were commenced in adjacent lands but completed under the demised land.

"That the material issues in this cause are *whether or not* wells drilled by defendant on adjacent lands drained and/or drain oil and/or gas from beneath the demised premises and if so, *whether or not* proper and/or necessary offset wells were drilled by defendant on the demised lands to properly protect the same from drainage, *whether or not* the defendant used diligence in protecting the demised premises . . . *whether or not* it used due diligence in exploring and/or developing the demised premises . . . how much *if any* oil and/or gas has been drained . . . and how much *if any* loss plaintiff suffered by reason of such drainage; *whether or not* wells commenced by defendant on adjacent lands were completed in the producing oil and/or gas sands underneath the demised lands and *if so,* how much and the quality and value of such production." (Italics ours.)

Taking this affidavit section by section it will be noted throughout the affidavit, as was repeated toward the end thereof, appears affiant's conclusion that "each and all of said records are necessary, proper and admissible in evidence

to aid the court in determining said issues and each of them and the inspection of said records by plaintiff is necessary and proper to enable plaintiff to properly and expeditiously present her evidence."

Tested by the decisions hereinbefore referred to, not any of the documents, excepting the leases, is described or designated with sufficient particularity so that it can be readily recognized, and secondly, it is not shown that any of the documents contain evidence material to the issue to be tried by the court. The affidavit of Mr. Mitschrich shows throughout that he has not any knowledge whatsoever as to the actual facts contained in the proposed records. Furthermore, each of the records referred to would not in and of itself be competent evidence, except the leases; his affidavit shows that each thereof is mere hearsay. As to the leases, the record shows that plaintiff is not a party to any of them and has no interest whatsoever in any of them.

■ The affidavit further shows, through its length, that it is a mere "fishing device", as contended for by petitioner. Being a fishing device it is in direct violation of the constitutional immunity against unlawful searches and seizures. As was said in *Ex parte Clarke*, 126 Cal. 235, at page 240 [77 Am. St. Rep. 176, 46 L. R. A. 835, 58 Pac. 546, 548] :

"In *Morrison* v. *Sturges*, 26 How. Pr. [N. Y.] 179, the court say: 'It is not enough that the party believes or is advised that the paper contains material evidence. The facts must be shown to support such belief.' Moreover, it was in effect a general omnibus order for the production of all defendant's books, which has always been held to be unauthorized; . . . the order was in the nature of what Lord Chancellor Hardwicke, over a century ago, called 'a mere fishing bill', and such bills have been universally condemned. It is quite evident that these books were not required to be produced for the direct purpose of introducing them in evidence. Plaintiff would not have offered them or any part of them in evidence unless he found something in the part offered that was relevant and material in support of his side of the case; and indeed, they would not have been otherwise admissible. He merely intended to draw his dragnet of inspection through all these books under the ostensible motive of trying to catch something which his witness had testified was not there. In the meantime, all the private business of the defendant—all its dealings with

persons other than plaintiff, its methods of conducting its affairs, perhaps its financial condition and other matters vitally important to its welfare—would have been exposed. There is no warrant in the law for such a forcible wholesale violation of a person's privacy upon such a showing as was made in this case. A man does not lose all his civil rights because he is brought into court as a party to a suit. As was said by Lord Hatherly: 'A court is bound to protect the defendant against undue inquisition into its affairs' (L. R. 7 Ch. App. 97, and notes); and it would be difficult to imagine a more striking instance of such 'undue inquisition' that an order ·compelling a defendant to produce for inspection all his books upon the mere suspicion—against positive evidence to the contrary—that they might possibly contain some evidence favorable to the plaintiff, and without pointing to any particular part of all these books over which this suspicion was supposed to hover.''

In the case at bar the petitioner filed affidavits in opposition to the application for order of inspection, in which it was positively set forth that the petitioner did not have any record of any violations of the terms of the lease upon which plaintiff brought her suit, and further, that they knew of no such violations.

■ There is not any merit in the contention of respondent that the letters referred to in the affidavits presented at the hearing contain admissions upon which the respondent court was justified to make the order of inspection.

A peremptory writ of mandate will issue as prayed.

Works, P. J., and Craig, J., concurred.