[L. A. No. 16626.   In Bank.—June 29, 1938.]

UNION TRUST COMPANY OF SAN DIEGO, Petitioner, v. THE SUPERIOR COURT OF SAN DIEGO COUNTY et al., Respondents.

452

Stearns, Luce, Forward & Swing for Petitioner.

C. J. Novotny for Respondents.

HOUSER, J.—From the record herein, it appears that on August 14, 1931, as the outcome of a foreclosure suit that was brought by Union Trust Company against C. J. Novotny, the plaintiff therein became entitled to a deficiency judgment in the sum of $1744.27. Some years thereafter Union Trust Company instituted another and separate action against the

same defendant for the purpose of recovering from him a separate judgment for the amount of the said deficiency. At the same time when the defendant answered to the complaint in the latter action, he also filed a cross-complaint and a counterclaim against Union Trust Company, wherein the said defendant sought to recover damages from Union Trust Company, alleged to have resulted to him by reason of the asserted negligence and the fraud committed and perpetrated respectively by it with respect to a specified trust which theretofore had been administered by Union Trust Company in behalf of the said defendant, as the owner of all the stock of Prudential Bond & Mortgage Company, a corporation. At a time shortly before the date that had been fixed for the trial of the latter action, at the instance of the defendant therein, the trial court made its order, in effect that the said defendant be permitted by the said plaintiff to inspect its several books of account and its various records that had been prepared, made, kept or maintained by it in connection with its administration of the said trust. On the ground that such order was violative of its constitutional rights, particularly in regard to what popularly is known as ''search and seizure'', the plaintiff refused to comply with the said order. Thereupon, of its own motion, and in the absence of the pursuit of an available if not more drastic proceeding, the trial court vacated its former order by which the cause had been set for trial and contemporaneously therewith, in substance, ordered that no trial of the action be had until at least thirty days had elapsed after the defendant in said action had been permitted by the plaintiff to inspect the said books and records. In such circumstances, at the solicitation of the plaintiff, the District Court of Appeal directed the issuance of its peremptory writ of mandate, by which, in effect, the trial court was required to vacate its former order which related to the time when trial might be had, and thereupon to set the cause for trial. On the petition of the defendant in the action, a hearing of the matter, after the decision therein by the District Court of Appeal, has been granted by this court.

It is obvious that a decision regarding the legality of the order of inspection that was made by the trial court will be decisive of the main question that is presented for consideration herein.

Aside from the rules obtaining in equity which appertain to the relief ordinarily available to a party by the

procedure known as a bill of discovery, both parties to this proceeding concede that in proper circumstances the general privilege accorded to either party to an action to inspect material and pertinent entries of accounts or documents in the possession or under the control of the other party is largely influenced by the statutory provisions that are contained in section 1000 of the Code of Civil Procedure.

■ Broadly speaking, the objection that is here presented with regard to such inspection, relates to the sufficiency of the means that was adopted or practiced by the defendant in his endeavor to comply with the procedural method that either is demanded by the terms of the statute, or that which is impliedly required by judicial construction thereof. Ordinarily, when clear and specific, naturally it might be anticipated that the former source of enlightenment would be controlling; but at least in the absence of such clarifying conditions, the latter becomes paramount. In that regard it may be noted that in each of several adjudications which heretofore have been made by the appellate tribunals of this state it has been declared that as a foundation for the legality of the making of an order of inspection, two separate, indispensable requirements must be made to appear: (1) that the books, or the paper, or the document that is sought to be inspected contains evidence that is material to an issue which is involved in the action or the proceeding with relation to which the order is proposed to be made; and (2) that the order by which such inspection may be authorized be so specific in its terms with reference to its designation or description of such book, paper, or document that it may be readily identified. (*Kullman, Salz & Co.* v. *Superior Court,* 15 Cal. App. 276 [114 Pac. 589]; *Shell Oil Co.* v. *Superior Court,* 109 Cal. App. 75 [292 Pac. 531].)

■ With respect to the first requirement, it is to be noted that the sufficiency of the defendant's pleading, by the terms of which the allegations of both the negligence and the fraud of Union Trust Company in the administration of the trust was tested by a demurrer that was interposed by the latter to such pleading, and that the ruling that was made by the trial court thereon was unfavorable to the said plaintiff. Therefore, in that regard, with reference to the foundation for the making of the order of inspection (as far as the element of materiality is concerned), it may be assumed that such order is not subject to legal criticism, particularly when

the allegations of the supporting affidavit are examined. It appears that the affidavit, by reference thereto, incorporated all the allegations that were contained in the cross-complaint and the counterclaim which were filed by the defendant, among which allegations were the following:

" . . . with the consent and approval of plaintiff's officers and directors (the plaintiff) fraudulently used such escrow funds in buying and dealing in the stocks of plaintiff corporation and its said associated and subsidiary corporation, as plaintiff is informed and believes;

"That in the furtherance of such purposes plaintiff misappropriated to itself and paid to itself under the fraudulent guise of fees large sums out of the funds of said trust belonging to defendant and said Prudential Bond & Mortgage Co., his assignor; that such payments and misappropriations were made to itself fraudulently and without right notwithstanding that defendant paid plaintiff the full sum agreed upon in full payment of all services rendered and to be rendered by plaintiff, but plaintiff nevertheless took further large sums in excess of the sum of $1,000 in alleged payment of services already paid for by defendant;

"That *plaintiff* (defendant) is informed and believes that since the maturity of said bonds plaintiff has fraudulently and unlawfully paid to itself and converted to itself further sums belonging to said trust and defendant in excess of the sum of $5,000 in addition to the full and reasonable value of all services rendered since such maturity;"

In addition thereto the cross-complaint and the counterclaim, as well as the affidavit, contained many other equally cogent allegations with respect both to the alleged negligence and the fraud of the plaintiff in the administration of said trust, from which the materiality of evidence that properly should appear in the books, records and documents which presumably were kept by the plaintiff and which were in its possession or under its control becomes readily apparent.

In determining the question of materiality of the records sought to be inspected, the trial court was not limited to a consideration of the affidavit, but also was entitled to consider the contents of the pleadings filed in the case which showed, or might show, the materiality of the evidence sought to be obtained. (*Maclay Rancho Co.* v. *Superior Court,* 81 Cal. App. 471 [254 Pac. 287].)

With regard to the scope permitted a trial court in the exercise of its discretion in the matter of determination of the question of the asserted "materiality" of books and records sought to be inspected by a party litigant, the following cases are pertinent: In the case of *Main* v. *Ring,* 219 Iowa, 1270 [260 N. W. 859, 862, 863], which also was an action involving the issue of fraud, the court said, " . . . The action, as previously noted, is for damages for deceit. One of the questions made by the pleadings is whether the defendant is guilty of fraud, . . . Obviously, anything which would throw light on these questions would be material. No nice discrimination on the question of materiality should be attempted in a situation of this kind. . . . The trial court determined the papers were material. . . . The presumption should be that the court acted within its proper jurisdiction. . . . The statute is clearly designed to help a party to a suit to discover material facts even though the documents evidencing such facts are in the possession of the adverse party, and it is a wholesome aid to the proper administration of justice." And in the case of *Dalton* v. *Calhoun County Dist. Court,* 164 Iowa, 187 [145 N. W. 498, Ann. Cas. 1916D, 695], where it was claimed that the application for the order (for inspection) failed to show affirmatively the materiality of the evidence sought to be adduced, the court said, " . . . The application . . . did not in terms state that the books were material, but it did state in detail what was expected to be proved from them . . . and if material such was sufficiently shown by the pleadings in the main case, and by the application for the production of the books, even though such fact was not expressly averred."

Nor, with respect to the second requisite, considering the facts here presented, may it properly be declared that the books and records as specified were not sufficiently identified in the order that was made for their inspection. As hereinbefore has been indicated, it should be noted that the order in question was made pursuant to notice that was given to the plaintiff that application for such an order would be made. Moreover, on the hearing of such application, the plaintiff, represented by counsel, was present and then and there was fully apprised not only of the contents of the supporting affidavit in behalf of such proposed order, but also with the contents of the pleadings, which by reference had been incorporated within such affidavit. The pertinent terms

of the order were: "It is hereby ordered that the plaintiff give to the defendants forthwith an inspection and copy or permission to take a copy of the entries of account and of the documents and papers mentioned in the affidavit of C. J. Novotny sworn to on May 19th, 1937, excepting those certain documents and records mentioned in said affidavit. . . ."
In the foundational affidavit thus referred to, the books, records and documents which assumedly had been kept by or which were under the control of the plaintiff were described as:

"All entries in all of plaintiff's cash books, day books, journals, trust records and other books and records relating to trust No. 5771 and the trust agreement made and entered into by and between said plaintiff and the Prudential Bond & Mortgage Co. on or about July 15, 1919, the assets of said trust and all properties, mortgages and securities transferred and assigned to plaintiff or received or held by it under or in connection with said trust and agreement; . . .

"All appraisements of all properties mentioned in and covered by the mortgages and securities conveyed and assigned or caused to be conveyed, transferred and assigned to plaintiff by said Prudential Bond & Mortgage Co. or in its behalf;

"All entries in said books relating to fees taken, received or claimed by or paid to plaintiff in connection with said trust and agreement and the mortgages and other securities received by plaintiff under said trust or in connection therewith;

"All entries in all of said books relating to the receipt of, deposit of and disbursement or payment of escrow and other funds received by plaintiff from said Prudential Bond & Mortgage Co.; . . .

"Documents, papers, instruments and instructions signed by said Prudential Bond & Mortgage Co. or said C. J. Novotny relating to the affairs, assets and securities of said trust and said Prudential Bond & Mortgage Co. and the management thereof."

Furthermore, with reference to the assertion that such books, records and documents which were sought to be inspected by the defendant were not sufficiently identified, it is clear that if in administering the trust to which the defendant referred in his cross-complaint and his counterclaim, the plaintiff pursued even the ordinary course of business, it would have

kept a set of books of some description (*Hotchkiss* v. *Levi*, 140 App. Div. 525 [125 N. Y. Supp. 462]); and presumably it preserved at least either the originals or copies of all important documents which were directly related to the administration of such trust.

The matter of obtaining an inspection of documents in a case where it is obvious that the rights of a party may depend upon its proper exercise, manifestly should not be regarded "as a game", having fixed rules that must be literally and punctiliously observed. "Literal accuracy cannot be expected in the description of a paper in the possession of the adverse party; such description as will apprise a man of ordinary intelligence of the document desired is enough." (*Burke* v. *Table Mountain Water Co.*, 12 Cal. 403.) It is apparent that, in reason, all that should be required of a party litigant in his endeavor to obtain an inspection of records which are pertinent to his cause and which he is or should be entitled to examine, is that in his attempt to do so, he describe them with such certainty only as will or should reasonably apprise his legal opponent, or the custodian of such records, of that which may be desired. If that be done, the fact that such description or designation of such records may appear to be faulty, deficient, uncertain or unintelligible to persons other than those who may be directly concerned in the compliance with an order by which an inspection may be directed or permitted, is of no consequence in a proper case, and on that account cannot be available to defeat the right of inspection. Whether the description of records is sufficient to inform their custodian of that which is desired, presents a question merely of whether under the circumstances and situation generally, considered in the light of reason and common sense, he ought to recognize and be able to distinguish or identify the particular thing that is required. In the instant matter, whether in the defendant's affidavit or in the order that was made by the trial court with reference to the defendant's right of inspection, if the several books, records or documents were, or either of them was not described in accordance with the plaintiff's appellation of them or any or either of them, that fact should not be deemed either determinative or as in anywise affecting the right of the defendant to inspect them. Nor, under the circumstances of this case, may the technical objection be available

that the order was too broad. The same objection was made in the case of *Gables Racing Assn.* v. *Persky,* 116 Fla. 77 [156 So. 392, 395], and while under the facts of that case, the court held that the order should be modified, it made the following statement relative to the validity of such order: ''While many more books, papers, and documents were required to be produced than the pleadings in the case seemed to require, and the order might have been with more propriety limited to such necessary papers and books as were likely to give some information to the court upon the question presented by the pleadings, we cannot say that the chancellor abused his discretion to the point of invalidating the order.''

In the instant case, it was the plaintiff's duty in the premises to comply with the order of the court as far as it was able in reason and good faith to ascertain the intent and meaning of the order here made. With regard thereto, it may be said at this point that the arbitrary refusal on the part of the plaintiff to comply with the order in question, based as it was upon technical objections, does violence to the spirit and intent of the statute under which the right of an inspection is conferred. It should be remembered that the purpose of a ''discovery'' is to assist in the administration of justice, and that the statutory right of inspection is based upon, and relates back to, ancient principles of equity.

In Pomeroy's Equity Jurisprudence, fourth edition, volume I, sections 190–195, at pages 260, 262, 267 and 273, in tracing the early history of discovery the author makes the following observation:

''The rules of the ancient common law concerning the competency of witnesses were exceedingly arbitrary, and would often work great injustice, unless their defects had been supplied by the equitable jurisdiction. In the common-law courts, prior to the modern statutory legislation, a party could not be examined as a witness, nor forced to make admissions in his pleadings, in behalf of his adversary; nor was there any means in the common-law procedure of compelling a party to produce, or submit for inspection, or furnish copies of any documents or books which might be in his possession or under his control, however important they might be to the other party's cause of action or defense. It was to supply this grievous defect in the ancient common-law methods that

equity established the first branch of its auxiliary jurisdiction, called discovery. . . . The suit for discovery, properly so called, is a bill filed for the sole purpose of compelling the defendant to answer its allegations and interrogatories, and thereby to disclose facts within his own knowledge, information, or belief, or to disclose and produce documents, books, and other things within his possession, custody, or control . . . Modern legislation has greatly interfered with the practical exercise of the auxiliary jurisdiction for a discovery, by introducing simpler and more efficacious methods in its stead, and by thus rendering a resort to it unnecessary and even inexpedient . . . the principles and doctrines relating to discovery, which have been settled by courts of equity, and which determine what facts parties can be compelled to disclose, and what documents to produce, and under what circumstances the disclosure or production can be obtained, will still continue to be recognized by the courts, and to regulate their action in enforcing the examination of parties and the production of writings by means of the more summary statutory proceedings. . . . As this auxiliary jurisdiction was contrived to supply a great defect in the ancient common-law methods, which was a constant source of wrong to suitors at law, and as it was intended to promote right and justice, discovery was, from the outset, favored by courts of equity.''

But there is another and perhaps equally cogent reason why the issuance of the order in this case was not improper. As hereinbefore has been noted, the parties to this litigation stood in the relation of trustor and trustee respectively, one to the other. When such a situation appears, the ordinary strictness of the rule relating to the right of inspection is greatly relaxed. The courts have repeatedly declared that in such circumstances, almost ''as a matter of course'', the trustor or the beneficiary has a right to a full and complete inspection of all books and records with relation to the trust; and the defendant here asserts that because of the instant trust relationship, many of the documents (trust agreement, appraisements, accounts of receipts and disbursements, as well as records of the assets of the trust) are as much the property of the defendant as they are of the plaintiff.

With respect to the general rule which is applicable in such situations, in 18 C. J., page 1117, it is declared that:

"A production or inspection of books and papers will be granted where the applicant has a special interest or right in them. Thus in an action between partners production and inspection of the partnership books will be ordered almost as a matter of course when such production and inspection is sought by one of the partners. So production and inspection will be required of books kept by an executor, or trustee, where the inspection is sought by a person interested in the estate of the decedent or by a beneficiary of the trust. . . . In short, production and inspection will be granted of all books and documents in which the parties have a common interest."

Also, in the case of *Hotchkiss* v. *Levi, supra,* where it was held that the request for an order of inspection should have been granted, the court said, "The allegations with respect to the keeping of books and records by the firm and the contents thereof are, it is true, made on information and belief. In the ordinary case this would be insufficient. . . . Here, however, the application is for a discovery and inspection of the books, records, and papers of agents and joint venturers, and it may fairly be presumed that a firm of stock brokers engaged in such an enterprise would keep books and records thereof, and it is not denied that they did keep them and that the plaintiff has them and has refused to permit the defendant to inspect them."

In the instant case, it also may be noted that although the affidavit which was presented by the defendant in support of his motion for an inspection of the records was more than ordinarily replete with respect to a statement of facts, nevertheless the plaintiff made no denial of such facts. In that connection, the rule is thus laid down in the case entitled *Alabama Girls' Industrial School* v. *Reynolds,* 143 Ala. 579 [42 So. 114, 115], as follows:

"But, when both parties have an equal right to the examination and inspection of documents and books of account, as in cases of partners, and books kept by a trustee of the trust account, and of documents acquired in a trust relation, which have to do with a pending suit between such parties, the rule is different, and the court will on application of either party order their production for inspection at any stage of the suit to enable him to prepare his case (citing cases) . . . It is not contended but that these books of account contain

evidence material to complainant's case. . . . So a trustee is bound to render every necessary information required of him, and when he is called to account he will be compelled to produce all the books, papers, writings, vouchers, and other documents which are in any way connected with the trust, and which are in his possession or under his power. 2 Bates on Fed. Eq. Prac., sec. 762.'' (See, also, *Stebbins* v. *Harmon,* 17 Hun (N. Y.), 445, *Livingston* v. *Curtis,* 12 Hun (N. Y.), 121, and *In re Smathers' Will,* 152 Misc. 774 [274 N. Y. Supp. 109].)

In effect, it is stated in Corpus Juris, volume 18, page 1116, that the enactment of statutes relative to the remedy of obtaining evidence by inspection was had with a view to provide a more speedy and less expensive remedy than by the proceedings in chancery; that they ''are remedial in their nature and should be liberally construed''.

That the trend of judicial decisions is to relax the rules which relate to the taking of evidence by ancillary proceedings, of which the inspection of documents is one method, to the end that the trial of actions may be expedited and justice be more efficaciously and speedily administered, is reflected in many modern decisions, some of which are here noted.

In the case of *Wheeling Steel Corp.* v. *American Rolling M. Co.,* 82 Fed. (2d) 97, although holding that the necessity for resort to discovery must be established, and under the facts of that case denied the right thereto, the court stated that '' . . . equity favors discovery as an aid to simplifying the issues and expediting the trial of suits at law'', and that ''the trend of modern legislation in respect to the examination of documents and records prior to trial has had the same objective''. And in the case of *Iroquois Hotel & Apartment Co.* v. *Iroquois Realty Co.,* 126 App. Div. 814 [111 N. Y. Supp. 172], it was said, ''A right of inspection of books and papers is . . . expressly given by the Code to a defendant where they affect the merits of the defense, and this defense need not necessarily be an affirmative one. Such inspection may greatly facilitate the trial and relieve the court from much detail, as well as apprise the parties so they (may) meet the particular dispute involved, and should be granted where a proper case is disclosed.'' Also to the same effect is the language used by the court in the case of *Main* v. *Ring,* 219 Iowa, 1270 [260 N. W. 859], where it was said, '' . . . in the

consideration of the question (of jurisdiction of the court to make the order) . . . a broad and liberal construction of the pleadings must be adopted and all the allegations of the petition must be considered". And in the case entitled *Sinclair Refining Co.* v. *Jenkins Petroleum Process Co.*, 289 U. S. 689 [53 Sup. Ct. 736, 77 L. Ed. 1449, 88 A. L. R. 496], a bill for discovery in advance of trial (under the equity rules, however), to obtain the disclosure of general facts as to the defendant's use of an invention, in an action at law for damages for alleged breach of agreement, was held to be proper. There the United States Supreme Court, speaking through Mr. Justice Cardozo, made the following pertinent statement:

"Help for the solution of problems of this order is not to be looked for in restrictive formulas. Procedure must have the capacity of flexible adjustment to changing groups of facts. The law of discovery has been invested at times with unnecessary mystery. There are few fields where considerations of practical convenience should play a larger role. The rationale of the remedy, when used as an auxiliary process in aid of trials at law, is simplicity itself. At times, cases will not be proved, or will be proved clumsily or wastefully, if the litigant is not permitted to gather his evidence in advance. When this necessity is made out with reasonable certainty, a bill in equity is maintainable to give him what he needs. Equity rule 58. There were other reasons in times past, when parties were not permitted to be witnesses, and when there was no compulsory process for the production of books or documents (citing cases). Today the remedy survives, chiefly, if not wholly, to give facility to proof."

Particularly with reference to the contention of the plaintiff that the order was too broad in scope, and in effect that it would permit the defendant to indulge in a so-called "fishing expedition" among the plaintiff's books and records, and therefore that such order was violative of its constitutional right to be secure against "unreasonable search and seizure", in the light of what has been said hereinbefore, it is clear that such claim is without merit. In substance, it has been declared by many judicial tribunals that the asserted right in this regard is limited by a determination of whether the proposed search and seizure would be unreasonable. It is manifest that by the enactment of the constitutional guaranty here under consideration, it was not in-

tended that the inherent power of the courts to elicit evidence in the trial of an action should be either unreasonably impaired or abrogated, but that in the exercise of such authority, judicial tribunals should be limited only by that which might constitute in each instance an "unreasonable" search or seizure. (*State* v. *Anderson,* 270 Mo. 533 [194 S. W. 268, L. R. A. 1917E, 833].) Furthermore, in the case of *Dalton* v. *Calhoun Dist. Court,* 164 Iowa, 187 [145 N. W. 498, Ann. Cas. 1916D, 695], where this protective provision was urged as a bar to the issuance of an order of inspection, it was stated that as a rule the provision "has reference to criminal or *quasi*-criminal proceedings, or to forfeiture and not the statutory methods for obtaining evidence". The court, in the latter case, went on to say that, " . . . we must presume that the trial court in exercising the discretion granted to it in such matters, and in the fairness which may be expected to control its acts in the matter, will permit no examination or discovery not necessary to the case, nor want in proper regard for the rights of both litigants".

In every case, much must necessarily be left in the first instance to the sound discretion of the trial judge.

From that which hereinbefore has been said, it follows that the alternative writ hereinbefore issued should be discharged, and that a peremptory writ should be denied. It is so ordered.

Shenk, J., Curtis, J., Waste, C. J., and Seawell, J., concurred.