[Civ. No. 22660.   First Dist., Div. One.   June 7, 1965.]

FLORA CRANE SERVICE, INC., Petitioner, v. THE SU-
PERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent; CONRAD C. EUS-
TACE et al., Real Parties in Interest.

772

Goldstein, Kopp & Skinner, Kopp & Skinner and Quentin L. Kopp for Petitioner.

No appearance for Respondent.

Adrian W. Rose for Real Parties in Interest.

SULLIVAN, P. J.—Petitioner seeks a writ of mandate commanding respondent court to vacate that portion of its order entered on February 3, 1965, which denied petitioner's motion for further responses to written interrogatories and to vacate a subsequent order entered February 23, 1965, quashing a subpoena duces tecum to take deposition.[1] We issued an alternative writ of mandate. Real parties in interest, defendants below, have made a return thereto purportedly by verified answer (Code Civ. Proc., § 1089[2]; Cal. Rules of Court, rule 56(c)). The return attaches and incorporates by reference a transcript of the hearing on the motion to quash the subpoena but not of the earlier hearing on the motion for further responses to the interrogatories. It alleges that petitioner was not denied issuance of a "legal and proper" subpoena and that petitioner "agreed to issue such a subpoena within the limits designated by the Court." Except for what may be implied in the foregoing, the return contains no denials of the material allegations of the instant petition.

The action pending in respondent court was commenced on October 14, 1964, by petitioner against real parties in interest Conrad C. Eustace doing business under the fictitious name of Maccon Masonry Materials, Inc., and Maccon Masonry Materials, Inc., a California corporation[3] to recover damages

---

[1]The order entered February 3, 1965, is a formal order entitled "Order denying in part and granting in part motion for order requiring further response to interrogatories." The order entered February 23, 1965, is a minute order.

[2]Unless otherwise indicated all code references hereafter are to the Code of Civil Procedure.

[3]Referred to hereafter as "Eustace" and "Maccon" respectively or as "defendants." Other defendants designated by fictitious names are not here involved.

for breach of contract. Recovery is sought on the theory that at all material times Maccon was used by Eustace "as his alter ego," that Maccon and Eustace "are one and the same" and that unless they are held to be "the alter ego of one another" inequity and injustice will result.[4] Defendants filed an answer and cross-complaint. The answer denies the material allegations of the complaint and alleges six separate affirmative defenses. The cross-complaint seeks recovery of money against petitioner and other cross-defendants[5] on a theory of *alter ego* conveniently if unimaginatively asserted by apparently employing almost word for word (*mutatis mutandis*) the pertinent allegations of petitioner's complaint. Cross-defendants filed an answer to the cross-complaint denying the material allegations thereof.

Following is a chronology of the procedural events thereafter occurring and giving rise to the problems now before us: On *December 15, 1964,* petitioner served and filed a notice for the taking of the deposition of Eustace upon oral examination on January 15, 1965, and also filed and served written interrogatories on Maccon pursuant to Code of Civil Procedure section 2030. On *December 24, 1964,* Maccon filed and served its answers thereto. On *January 6, 1965,* petitioner filed its notice of motion for order requiring further responses to interrogatories and on January 8, 1965, notified counsel for real parties in interest that the deposition of Eustace "would be cancelled" until the above motion had been resolved. On *February 3, 1965,* respondent court filed its order denying in part and granting in part petitioner's motion. On *February 15, 1965,* petitioner served and filed a notice for the taking of the deposition of Eustace upon oral examination on February 24, 1965, and obtained the issuance, on declaration, of a "subpoena duces tecum to take deposition" directed to Eustace and requiring production of certain documents at the time and place of the above deposition. On *February 19, 1965,* Eustace filed his notice of motion to quash the above subpoena duces tecum. On *February 23, 1965,* respondent court by its minute

---

[4]The complaint is in four counts, the last three of which are common counts incorporating by reference allegations of the first count alleging a basis for disregarding the corporate entity. It is to be noted that Eustace and Maccon's return filed herein in no way takes issue with the allegations of the petition in reference to the nature and purpose of petitioner's action below.

[5]Cross-defendants are: Flora Crane Service, Inc., a California corporation, Robert Flora, an individual, Robert Flora, doing business under the fictitious name of Flora Crane Service, Inc., a California corporation, First Doe, Second Doe and Third Doe.

order "quashed subpoena without prejudice to right to seek new subpoena and modified questions." On *February 25, 1965,* petitioner instituted the instant proceeding in mandamus.

We are thus called upon to determine the propriety of two separate orders dealing with discovery procedures. ■ The writ of mandate is a proper remedy for reviewing such procedures and for obtaining relief from an order denying a party utilization thereof. (*Carlson* v. *Superior Court* (1961) 56 Cal.2d 431, 435-436 [15 Cal.Rptr. 132, 364 P.2d 308]; *Regents of University of California* v. *Superior Court* (1962) 200 Cal.App.2d 787, 789 [19 Cal.Rptr. 568]; *Wooldridge* v. *Mounts* (1962) 199 Cal.App.2d 620, 629 [18 Cal. Rptr. 806].) ■ It may be thus availed of to compel the trial court to order a party to answer interrogatories propounded pursuant to section 2030 (*West Pico Furniture Co.* v. *Superior Court* (1961) 56 Cal.2d 407, 414-415 [15 Cal.Rptr. 119, 364 P.2d 295]; *Brown* v. *Superior Court* (1963) 218 Cal. App.2d 430, 433 [32 Cal.Rptr. 527]; *Smith* v. *Superior Court* (1961) 189 Cal.App.2d 6, 10 [11 Cal.Rptr. 165, 88 A.L.R.2d 650]; *Ryan* v. *Superior Court* (1960) 186 Cal.App.2d 813, 816 [9 Cal.Rptr. 147]) or to determine the propriety of an order quashing or refusing to quash a subpoena duces tecum issued pursuant to section 1985 for use in conjunction with a deposition upon oral examination. (*Strauss* v. *Superior Court* (1950) 36 Cal.2d 396, 403 [224 P.2d 726]; *Wemyss* v. *Superior Court* (1952) 38 Cal.2d 616, 617 [241 P.2d 525]; *Pelton Motors, Inc.* v. *Superior Court* (1953) 120 Cal.App.2d 565, 570 [261 P.2d 275].) ■ "A writ of mandamus may issue not only to enforce a proper discovery right [citations], but also to prevent improper discovery proceedings. . . ." (*Harabedian* v. *Superior Court* (1961) 195 Cal.App.2d 26, 30 [15 Cal.Rptr. 420, 89 A.L.R.2d 944].)

■ However the writ will not be granted unless the trial court has abused its discretion. (*West Pico, supra,* compelling answers to written interrogatories propounded pursuant to section 2030; *Smith, supra, idem; Ryan, supra, idem; Wemyss, supra,* compelling quashing of subpoena duces tecum issued in connection with deposition; *Strauss, supra,* compelling vacating of order quashing subpoena duces tecum issued in proceeding to perpetuate testimony; see 3 Witkin, Cal. Procedure (1954) Extraordinary Writs, §§ 77-78 and 1963 Supp., *idem;* Witkin, Cal. Evidence (1958) § 560,

p. 609.)[6] ▮ In determining whether or not there has been an abuse of discretion statutes providing discovery procedures should be liberally construed. (*Smith, supra*; *Harabedian, supra*.) ▮ Nevertheless, the following language from *Ryan* v. *Superior Court, supra*, 186 Cal.App.2d 813, 816-817 and quoted in *West Pico Furniture Co.* v. *Superior Court, supra*, 56 Cal.2d 407, 415, is pertinent to the case at bench: "One of the prime purposes of the Discovery Act is to expedite the trial of the action. This purpose will be defeated if appellate courts entertain petitions for prerogative writs by which a review of the orders of trial courts in discovery proceedings are sought and which do not clearly demonstrate an abuse of discretion by the trial court where discovery is denied, or a violation of privilege or of the provisions of section 19 of article I of the Constitution of this state where discovery is granted. This court will hereafter refuse to entertain petitions for prerogative writs in discovery matters which do not allege facts which would entitle the petitioner to the relief sought under the principles we have set forth."

With these principles in mind, we turn to the two orders and the disputes arising therefrom.

1. *The interrogatories.*

Petitioner moved for an order requiring Maccon to file further answers to interrogatories numbers 4, 5, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 33, 33(a), 33(b), 33(c) and 37. Its motion was supported by the declaration of its counsel. Maccon filed no affidavits or declarations in opposition and the motion was submitted on the declaration of petitioner. The court granted the motion as to numbers 33(a) and 37 and denied it as to the rest.

▮ Interrogatory 4 reads as follows: "Describe fully all

---

[6]Despite the few recent cases reviewing in mandamus proceedings action of the trial court in respect to subpoenas duces tecum in connection with depositions, there can be little doubt that the central question confronting the reviewing court is one of abuse of discretion. Cases decided prior to the present Discovery Act (§§ 2016-2036) and dealing with orders for *inspection* of documents under former section 1000 applied this test. "Whether such a motion [for inspection] should be granted or denied is within the trial court's sound discretion and whatever order the court might make will not be disturbed *in the absence of an abuse of discretion.* [Citations.]"(Italics added.) (*Dowell* v. *Superior Court* (1956) 47 Cal.2d 483, 486 [304 P.2d 1009]; see *Adams* v. *Superior Court* (1957) 49 Cal.2d 427, 430-431 [317 P.2d 983]; *Los Angeles Transit Lines* v. *Superior Court* (1953) 119 Cal.App.2d 465, 467-469 [259 P.2d 1004].) The last cited case points out that orders for inspection under former section 1000 and subpoenas duces tecum under section 1985 have the same basic principles underlying both proceedings.

books and records of this defendant and state the name and address of the present custodian and whether you will make them available to plaintiff without court order." Maccon's answer thereto is: "Objected to on the ground that the information called for is so general as to include matters irrelevant to the subject matter of this action and as to also be oppressive."

Interrogatories propounded under section 2030 "may relate to any matters which can be inquired into under subdivision (b) of Section 2016 . . ." (§ 2030, subd. (b).) Therefore they can be propounded "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party, or to the claim or defense of any other party, *including the existence, description, nature, custody, condition and location of any books, documents,* or other tangible things and the identity and location of persons having knowledge of relevant facts." (Italics added.) (§ 2016, subd. (b).)

It is obvious that petitioner's request for a description of Maccon's books and records seeks information "reasonably calculated to lead to the discovery of admissible evidence." (§ 2016, subd. (b).) Such a description will place petitioner in a position to call for the production of such books and records either by appropriate motion (§ 2031) or through the issuance of a subpoena duces tecum (§ 1985). It is to be noted that interrogatory 4 of course does not require the *production* of the books and records in question but merely seeks *information* about them. As the court said in *West Pico Furniture Co.* v. *Superior Court, supra,* 56 Cal.2d 407, 419-420: "Part of that information would be obviously necessary in order to identify the specific documents should inspection be later desired. Inspection may not be had without adequate identification of the document sought to be inspected. . . . Should petitioner later seek inspection of these very contracts, but be unable to clearly specify the same with particularity, it would undoubtedly be met with the contention that it must first seek identification by interrogatories or deposition before seeking inspection."

It is also worthy of note that petitioner initiated simultaneously and coordinated effectively two separate discovery procedures. On December 15, 1964, it propounded to Maccon written interrogatories which the latter was required to answer in fifteen days and did answer in nine. On Decem-

ber 15 it also noticed the taking of Eustace's deposition for January 15, 1965, a month later, obviously to allow petitioner ample time to receive and utilize the information sought through written interrogatories. It can fairly be assumed that petitioner intended to interrogate Eustace at the latter's deposition as to the books and records, and it seems apparent that Maccon's complete refusal to answer interrogatory 4 frustrated this permissible objective.

Nor is there any merit in Maccon's objection that the interrogatory is oppressive. It is worthy of note that Maccon made no attempt at a showing of oppression in the court below. While interrogatory 4 calls upon Maccon to "Describe *fully all* books and records" (italics added), reasonably construed this means, in our view, a description by appropriate categories or classifications, phrased with reasonable particularity.

What is a reasonably adequate response is for the determination of the trial court. But the interrogatory *is* susceptible of *some* reasonably adequate answer and we can see no basis for the court's denial of the interrogatory *in toto*. At the very least the court could have required that the interrogatory be rephrased (*West Pico Furniture Co.* v. *Superior Court, supra,* 56 Cal.2d 407, 419) although under the circumstances we greatly doubt the necessity of so doing.

The important factor to be kept in mind is that petitioner is entitled to such information as will permit it to fashion a reasonably understandable description of the books and documents in seeking their inspection or production. (*Union Trust Co.* v. *Superior Court* (1938) 11 Cal.2d 449, 458 [81 P.2d 150, 118 A.L.R. 259]; *McClatchy Newspapers* v. *Superior Court* (1945) 26 Cal.2d 386, 397 [159 P.2d 944].)

Interrogatory 5 reads: "Itemize by nature and value all assets and all liabilities of this defendant." Maccon's answer thereto is: "Objected to on ground that the information called for is not relative to the subject of this action and is oppressive and harrassing in nature."

Read against the pleadings, interrogatory 5 is also reasonably calculated to lead to the discovery of admissible evidence on the *alter ego* issue. In essence the theory of petitioner's complaint is that Maccon has been used by Eustace to accomplish an unjust and inequitable purpose and that its corporate entity should be disregarded. In order to establish that the acts and obligations of Maccon are legally those of Eustace, and vice versa, it must be shown "that the corporation is not only influenced and governed by that person, but that there

is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased; . . .'' (*Minifie* v. *Rowley* (1921) 187 Cal. 481, 487 [202 P. 673]; see *Watson* v. *Commonwealth Ins. Co.* (1936) 8 Cal.2d 61, 68 [63 P.2d 295]; *Stark* v. *Coker* (1942) 20 Cal.2d 839, 846 [129 P.2d 390]; *Automotriz etc. De California* v. *Resnick* (1957) 47 Cal.2d 792, 796 [306 P.2d 1, 63 A.L.R.2d 1042]; *Riddle* v. *Leuschner* (1959) 51 Cal.2d 574, 580 [335 P.2d 107].) *Automotriz, supra,* points out ''that the conditions under which a corporate entity may be disregarded vary according to the circumstances in each case.'' In *Associated Vendors, Inc.* v. *Oakland Meat Co.* (1962) 210 Cal.App.2d 825, 838-840 [26 Cal.Rptr. 806], we noted the following, among a variety of, factors bringing the doctrine into play: ''[T]he failure to adequately capitalize a corporation; the total absence of corporate assets, and under-capitalization [citations]; the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation [citations]; . . .'' (P. 839). ▮ It is self-evident that balance sheet information is relevant to the *alter ego* issue and that Maccon's objection on the grounds of relevancy is not well taken.

Maccon's objection also raised the question of oppression and harrassment. However, Maccon made no showing below as to what this consisted of. Nor are we favored here with any enlightenment beyond the mere making of the argument. Petitioner does not expressly seek, nor does its interrogatory 5 reasonably construed appear to require, the specified information in minute detail. We would think that the interrogatory merely calls for the usual balance sheet information set forth in general categories of items of assets and liabilities in accordance with recognized accountancy procedures. In the light of present day business methods and the requirements of governmental regulatory and taxing authorities, as well as of private lending institutions, it would be surprising if Maccon did not have a balance sheet available. A balance sheet speaks as of a fixed and given date. ▮ The interrogatory is silent on this point but can be reasonably construed as seeking contemporaneous information. ▮ Whether the information furnished is reasonably up to date and adequate in form and content is a matter for the trial court's determination.

▮ Furthermore the objection that the interrogatory is oppressive and harassing must fall before the provisions of

subdivision (c) of section 2030.[7] If Maccon did not desire to answer this interrogatory it could have placed on petitioner the burden of obtaining the information by simply specifying the records containing it and affording petitioner an opportunity to examine them. (*West Pico Furniture Co.* v. *Superior Court, supra,* 56 Cal.2d 407, 420.)

We conclude that the court abused its discretion in refusing to require further responses as to interrogatories 4 and 5.

Interrogatories 19 to 28 inclusive require Maccon to state "all contentions" forming the basis of its first five separate affirmative defenses to petitioner's complaint[8] (interrogatories 19 to 23), to explain how the complaint fails to state facts sufficient to constitute a cause of action and how there has been a defect and misjoinder of parties defendants[9] (interrogatories 24 and 25), and, finally to explain how and in what manner the complaint is ambiguous, unintelligible and uncertain (interrogatories 26 to 28). Maccon objects to all of these interrogatories on the ground that it "has no license to practice law in this state or elsewhere."[10]

Petitioner argues that the last mentioned interrogatories are proper on the authority of *Singer* v. *Superior Court* (1960) 54 Cal.2d 318 [5 Cal.Rptr. 697, 353 P.2d 305]. In that case interrogatories propounded by the plaintiff called upon defendant to "state what *fact* or *facts* form the basis" (italics

---

[7]Subdivision (c) of section 2030 provides: "When the answer to any interrogatory may be derived or ascertained from the business records of the party to whom such interrogatory is addressed or from an examination, audit or inspection of such business records, or from a compilation, abstract or summary based thereon, it shall be a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party by whom the interrogatory was proposed reasonable opportunity to examine, audit or inspect such records and to make copies thereof or compilations, abstracts or summaries therefrom."

[8]These five defenses are as follows: "(1) Complaint does not state facts sufficient to constitute a cause of action. (2) That there is a defect and misjoinder of parties defendants. (3) That the complaint is ambiguous. (4) That the complaint is unintelligible. (5) That the complaint is uncertain."

[9]These interrogatories 24 and 25 are actually duplicative of 19 and 20 since they refer to the first two affirmative defenses. See fn. 8, *ante.*

[10]Maccon's full answer to interrogatories 19 to 28 is as follows: "The Corporation has no license to practice law in this state or elsewhere. The technical legal defenses which these questions pertain to were determined and set forth by The Corporation's attorney, to whom the defense of this action was entrusted completely and his technical legal knowledge in these regards are what are relied on by The Corporation. The Corporation has not asked for or received any legal opinion on these matters."

added) of the defenses of contributory negligence and assumption of risk pleaded in the answer. Noting the propriety of pleading such defenses in the answer, the court held that the interrogatories should have been answered even though they pertained to the pleadings. "Nor can it be said that plaintiff is in a better position than defendant to know the answers to the interrogatories. While it is true that plaintiff may have more knowledge than his adversaries of the facts which allegedly caused the accident, he does not necessarily have knowledge of the facts on which this defendant bases its defenses. The information sought by these particular interrogatories is of a nature peculiarly within the mind of defendant. Moreover, no rule or authority is cited which authorizes refusal to answer an interrogatory simply upon the ground that the answer is known to the party seeking the information." (P. 324.) The appellate court directed the trial court to require an answer.

However two factors distinguish the instant case from *Singer*. In the first place interrogatories 19 to 23 call upon defendant to state *contentions*, not *facts*. Similarily, the following interrogatories 24 to 28 phrased in terms of "how and in what manner" do not necessarily seek *facts* but seek contentions, legal arguments, conclusions or opinions. Secondly, unlike *Singer* where defenses were properly pleaded in the answer, there may be here good reason for concluding that at least the second, third, fourth and fifth separate defenses were not. (See fn. 8, *ante.*) It is manifest that the first five separate defenses to which the pertinent interrogatories refer are nothing more than grounds of demurrer contained in section 430.[11] Section 433 provides "When any of the matters enumerated in Section 430 do not appear upon the face of the complaint, the objection may be taken by answer; . . ." Section 434 provides: "If no objection be taken, either by demurrer or answer, the defendant must be deemed to have waived the same, excepting only the objection to the jurisdiction of the court, and the objection that the complaint does not state facts sufficient to constitute a cause of action."

Putting aside temporarily the first separate defense dealing with grounds of general demurrer, we cannot say that the trial court abused its discretion in denying answers to the remaining interrogatories since it was warranted in conclud-

---

[11]Defendants' first separate defense is the equivalent of a general demurrer (§ 430, subd. 6). The next four defenses are the grounds of demurrer set forth respectively in subdivisions 4, 7, 8 and 9 of section 430.

ing that the interrogatories in question sought contentions, conclusions or legal arguments instead of facts, and since additionally it may have concluded that the last four separate defenses were addressed to defects which *did* appear on the face of the complaint and objections presented therein should have been taken by demurrer. Or to state it another way, the court may have concluded that the four defenses as pleaded did *not* indicate that the defects to which they were addressed did *not* appear upon the face of the complaint. In any event the court may have felt that these defenses were not properly pleaded, should not be made the subject of interrogatories and on the contrary should have been eliminated by a motion to strike. (§ 453.)

Does the first separate defense asserting that petitioner's complaint did not state facts sufficient to constitute a cause of action fall into a different category? We think not. It is arguable of course that under the waiver statute (§ 434) this attack on the very fundament of the action can be made at any time and that petitioner should be apprised of the facts on which it is based. As we have pointed out, the pertinent interrogatory (19) by its express language sought *contentions* rather than *facts* and its denial by the court might be upheld even on this narrow basis. However, on analysis, we think that the interrogatory does not in substance ask for facts or at least that the court below could have properly reached such a conclusion. Unlike *Singer, supra*, the interrogatory does not seek a *fact* or *facts* forming the basis of a defense relied upon by the *adverse party*. Its purpose rather is to have Maccon point out what material fact or facts have *not* been alleged in the pleading of the party propounding the interrogatory. Thus even though the answer may be expressed in terms of facts, in reality the interrogatory calls for the *legal opinion* or *contention* of the adverse party as to the sufficiency of petitioner's complaint. The sufficiency of the complaint is petitioner's responsibility. The trial court was warranted in concluding that petitioner was attempting to shift to defendants its own responsibility of pleading an actionable cause.

2. *The subpoena duces tecum.*

It will be recalled that after the court denied in the main further responses to the written interrogatories, petitioner again noticed the taking of Eustace's deposition and at the same time obtained the issuance of a subpoena duces tecum in connection therewith. (See § 2016, subd. (a), last sen-

tence.) The subpoena, directed to Eustace, commanded him to appear at the deposition as previously noticed and to produce at that time and place eight items of books and documents which we set forth in detail *infra*. Eustace promptly moved to quash the subpoena on the grounds (a) that the books and records demanded to be produced thereby were "not relevant or material to the issues of the case" and (b) that the demand was "unreasonable and oppressive and made to harass." After a hearing the court, as its minute order reflects, "quashed subpoena without prejudice to right to seek new subpoena and modified questions."

The application[12] for the subpoena sought, and the subpoena commanded, the production by Eustace at the deposition of the following "books, documents, papers and records"[13] of Maccon in his possession or under his control: "1. Notes, correspondence, memoranda and other documents relative to the formation and organization of Maccon . . . from January 1, 1963, to the present; 2. All pre-incorporation agreements . . .; 3. The names and addresses of all employees . . . from January 1, 1963, to the present; 4. All financial statements, statements of assets and liabilities, journal entries, ledger books, bank statements and cancelled checks from the time of the formation of Maccon . . . to the present; 5. All statements and records of accounts payable, accounts receivable and payroll records . . . from formation to the present; 6. All papers and documents relating to all transactions between Maccon . . . and plaintiff, including, but not limited to, notes, notebooks, tablets and memoranda relating to discussions and communications between such parties; 7. Copies of the Federal and State income tax returns of Maccon . . . and Conrad C. Eustace for 1963 and 1964; and 8. Articles of Incorporation, By-Laws, amendments to Articles of Incorporation, amendments to By-Laws, payroll records, stock ledgers, books of account, minutes of meetings of the Board of Directors of Maccon . . ., minutes of the meetings of the shareholders of Maccon . . ., stock book, stock ledger book, journal entries, stock escrow receipts and all correspondence relating thereto, of Maccon . . . from its formation on or about March 7, 1963, to the present."

In respect to all of the above eight items, petitioner's appli-

---

[12] A declaration by petitioner's counsel made and executed pursuant to section 2015.5.

[13] The application but not the subpoena contains at this point the qualifying clause "which are not privileged."

cation for the subpoena states: That "One of the *issues* . . . is plaintiff's *allegation*" (italics added)[14] that Maccon and Eustace "are the alter ego of one another. Other *issues* are plaintiff's *allegation* that such defendants breached an agreement" (italics added) to supply pallets for brick, to pay for brick delivered, and to furnish a forklift truck and operator; and that the books, papers and documents "contain evidence *which is material and relevant to the issue*" (italics added) of *alter ego*, breach of contract, and petitioner's liability to defendants for forklift rental.

The application further states: "Some of the books, documents and other things described above are material to the alter ego issue in that they contain evidence as to the structure of Maccon Masonry Materials, Inc., the manner in which such corporation was formed and has been operated since its formation and the financial interest and business participation of Conrad C. Eustace in the affairs of such corporation.

"The other books, documents and things are material to the issues of whether an agreement was made between plaintiff and defendants on or about March 1, 1963, as to the supplying of brick by plaintiff and pallets, a forklift and a forklift operator by defendants and contain evidence of the manner in which the parties carried out their respective obligations under such agreement, as well as the names and addresses of potential witnesses.

"The pleadings, records and files in this action are expressly incorporated by reference in this declaration, . . ."

It will be convenient to dispose preliminarily of items 3 and 7 of the subpoena. ▆▆▆ Under item 3 petitioner is merely attempting to have Maccon or Eustace furnish it with a list of employees. This is not the proper function of a subpoena duces tecum which requires the witness "to bring with him any books, documents, or other things under his control" (§ 1985) and presupposes the *existence* of such evidence. Petitioner obviously misconceives the procedure used and should avail itself of other proper vehicles of discovery (§§ 2016, 2030). ▆▆▆ As to item 7, copies of income tax returns are privileged from disclosure and therefore not subject to production in discovery proceedings. (*Webb* v. *Standard Oil Co.* (1957) 49 Cal.2d 509, 512-514 [319 P.2d 621]; see *Aday* v. *Superior Court* (1961) 55 Cal.2d 789, 796 [13 Cal. Rptr. 415, 362 P.2d 47].) Indeed, in the court below peti-

---

[14]We construe this language to mean issue or issues framed by defendants' denial of the pertinent allegations referred to.

tioner practically conceded the impropriety of these two items and at oral argument before us made no attempt to sustain them. We conclude that the court's action as to items 3 and 7 was proper and turn to the remaining items of the subpoena. Unless otherwise indicated, our following discussion refers only to such remaining items.

Section 2016, subdivision (a), provides in relevant part: "The attendance of witnesses or the production of books, documents or other things at depositions may be compelled by the use of subpoena as provided in Chapter 2 (commencing with Section 1985), Title 3, Part 4 of this code."

Section 1985 provides in relevant part: "An application before trial for a subpoena duces tecum shall be, or contain, an affidavit showing good cause for the production of the matters and things described in such subpoena and shall specify the exact matter or things desired to be produced, shall set forth in full detail the materiality thereof to the issues involved in the case, and shall state that the witness has the desired matters or things in his possession or under his control."

Section 2036 provides: "(a) A party required to show 'good cause' to obtain discovery under any provisions of Chapter 2 (commencing with Section 1985) or of Article 3 (commencing with Section 2016) of Chapter 3 of this title shall show specific facts justifying discovery and mere proof of the relevance of the information sought to the subject matter of the action shall not be sufficient.

"(b) The showing set forth in subdivision (a) of this section and any showing made in opposition thereto shall be made in the trial court prior to that court's determination of the matter."

Does petitioner's application in the instant case satisfy the requirements as to the *identification* of the books and documents sought to be produced, their *materiality,* the witness' *possession* and *control* of them and as to the *showing of good cause* for their production? Or to state it another way, has petitioner failed to meet any of the above requirements so that the action of the trial court in quashing the subpoena was justified?

As noted above, it was incumbent upon petitioner to "specify the exact matters or things desired to be produced" (§ 1985). In *Union Trust Co.* v. *Superior Court, supra,* 11 Cal.2d 449, 458, which was decided before the recent Discovery

Act and dealt with a motion under former section 1000,[15] the court said: "It is apparent that, in reason, all that should be required of a party litigant in his endeavor to obtain an inspection of records which are pertinent to his cause and which he is or should be entitled to examine, is that in his attempt to do so, he describe them with such certainty only as will or should reasonably apprise his legal opponent, or the custodian of such records, of that which may be desired. . . . Whether the description of records is sufficient to inform their custodian of that which is desired, presents a question merely of whether under the circumstances and situation generally, considered in the light of reason and common sense, he ought to recognize and be able to distinguish or identify the particular thing that is required." *West Pico Furniture Co.* v. *Superior Court, supra,* 56 Cal.2d 407, 419-420, arising under the new discovery statutes and quoted by us *supra,* declared: "Inspection may not be had without adequate identification of the document sought to be inspected. This was the rule prior to the present discovery statutes (*Union Trust Co.* v. *Superior Court,* 11 Cal.2d 449, 458 [81 P.2d 150, 118 A.L.R. 259]), and such is the rule under the present act (see discussion 2 DeMeo, California Deposition and Discovery Practice, § 10.10, p. 141)." We see no good reason why the above standards of identification for inspection under former section 1000 and production under its successor statute section 2031 should not be deemed applicable where production of books and documents is compelled by a subponea duces tecum. (See 1 DeMeo, California Deposition and Discovery Practice § 2.15.) However, requisite identification may be defeated by generality of description. As a result, identification may be inadequate in the light of the above rules when the books and documents sought to be produced are designated by or included within a so-called omnibus description. (*Ex parte Clark* (1899) 126 Cal. 235, 240-242 [58 P. 546, 77 Am. St. Rep. 176, 46 L.R.A. 835]; *Paladini* v. *Superior Court* (1918) 178 Cal. 369, 374-375 [173 P. 588]; *Kullman, Salz & Co.* v. *Superior Court* (1911) 15 Cal.App. 276, 285-286 [114 P. 589]; *Shell Oil Co.* v. *Superior Court* (1930) 109 Cal.App. 75, 80-81, 87-88 [202 P. 531]; cf. *Strauss* v. *Superior Court* (1950) 36 Cal.2d 396, 403-404 [224 P.2d 726]; *Pacific Solvents Co.* v. *Superior Court* (1948) 88 Cal.App.2d 953, 955 [199

[15]Former section 1000 was repealed by Statutes 1957, chapter 1904, section 1, said repeal being operative January 1, 1958, and was in effect replaced by section 2031, one of the new discovery statutes.

P.2d 740].) The unlimited characteristics of such a description may impair or destroy exactitude so that the custodian of the records is not reasonably apprised of what he must produce.

▮ Tested by the above rules, the remaining items of the subpoena, with minor and few exceptions, appear to us to be fashioned in omnibus descriptions or the equivalent thereof. There is some redeeming particularity in item 8 which contains such documents as articles of incorporation, bylaws, amendments thereto, and the corporate stock book. As the transcript of the hearing discloses, the trial judge felt that with some possible exceptions in items 1 and 8 not identified in the record, all of the items of the subpoena were "too broad" and not properly particularized and that the subpoena as a whole was too broad and in fact a "blanket" subpoena. In view of its general and all embracive language set forth *supra,* we agree with him.

▮ It was also incumbent upon petitioner in seeking production of the books and documents to "set forth in full detail the materiality thereof to the issues involved in the case" (§ 1985). The transcript of the hearing discloses that, despite the above language of the statute, both the court and the parties believed that the question to be resolved was not whether the matters covered by the subpoena were material to the issues of the case but whether they were relevant to the subject matter involved in the action. ▮ "Relevancy to the subject matter involved in the pending suit is a broader concept than relevancy to the issues" (*Pettie* v. *Superior Court* (1960) 178 Cal.App.2d 680, 687 [3 Cal.Rptr. 267]) and it seems to us that there is a substantial difference in meaning between the language "materiality thereof to the issues involved in the case" found in section 1985 and the language "relevant to the subject matter involved in the pending action" found for example in section 2016, subdivision (b) and made applicable to section 2031, which the parties hereto appeared to have in mind. ▮ Although production can be compelled as against a witness who is a party by employing the procedures under either section 1985 or section 2031 (for a comparison of the procedures see Louisell, Modern California Discovery, § 6.07; 1 DeMeo, *op. cit.,* § 2.16), a requirement of "materiality . . . to the issues involved in the case" is prescribed by section 1985. We would think that the statute means what it says. ▮ It is noteworthy that although the Legislature amended section 1985 in 1961 to add thereto the

additional requirement of "showing good cause for the production," a requirement similar to that found in section 2031, it made no change in the requirement of section 1985 as to "materiality . . . to the issues involved in the case." Despite the general similarity of both discovery procedures, this action or inaction on the part of the Legislature indicates an intention not to equate "materiality to the issues" in section 1985 with "relevancy to the subject matter" in sections 2016, subdivision (b) and 2031.

Petitioner argues that the latter is the proper criterion applicable to section 1985, citing *Coy* v. *Superior Court* (1962) 58 Cal.2d 210, 217 [23 Cal.Rptr. 393, 373 P.2d 457] and *Filipoff* v. *Superior Court* (1961) 56 Cal.2d 443 [15 Cal.Rptr. 139, 364 P.2d 315]. *Coy* involved written interrogatories under section 2030, not a subpoena duces tecum under section 1985.[16] *Filipoff did* involve a subpoena duces tecum and, indeed so far as our research discloses, appears to be the only Supreme Court case involving such a subpoena since the enactment of the new Discovery Act. In that case, where a witness who brought certain documents (notes of conversations) to a deposition as required by a subpoena duces tecum refused to produce them, the Supreme Court by mandate directed the entry of an order in the trial court requiring the submission of the documents covered by the subpoena to the deponent for the purpose of refreshing his recollection in answering questions at the deposition. In support of the trial court's previous order denying such enforcement, it was contended that, in view of the dismissal of an affirmative defense to which the notes were pertinent, they were inadmissible and that since production at a deposition even for the limited purpose of refreshing the memory of the witness was "tantamount to inspection" production at the deposition should be denied. The Supreme Court said "This reasoning is unsound. Not only would these notes obviously be admissible on cross-examination for impeachment purposes, but admissibility is not a proper test. Relevancy to the subject matter is the sole test for the production of unprivileged matter. (*Greyhound Corp.* v. *Superior Court, supra, ante,* p. 355.)" (56 Cal.2d 443, 452.) However it is to be noted that the court nowhere made specific

---

[16]*Coy* refers to *Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355 [15 Cal.Rptr. 90, 364 P.2d 266] as pointing out "that in adopting the discovery statutes the Legislature had intentionally done away with the older test of materiality to the *issues,* and had substituted therefor the test of relevancy to the *subject matter.*" (58 Cal.2d at p. 217.)

reference to section 1985, or commented on the fact that such section contained different language from that used in the Discovery Act or expressly construed such language to mean the test of relevancy here urged by petitioner.

*Filipoff* did not involve the direct attack on a subpoena by a motion to quash but the review of an enforcement order relating to a deposition and a subpoena. Whatever pertinency the reference to *Greyhound* may have had in the disposition of the argument urged against such enforcement, *Filipoff* in our view reveals no deliberate intention on the court's part to erase from the statute (§ 1985) the requirement of "materiality of the issues" clearly prescribed therein. The court not having equated discoverability under section 1985 with discoverability under section 2031 we feel constrained to give recognition to the difference in language found in section 1985. Indeed it is highly significant that petitioner itself, as its application irrefutably shows, did not seek production of the books and records on the mere basis of their relevance to the subject matter but only and plainly on the basis that they were *material to the issues.*

Although petitioner's application alleges that the issues in the case are *alter ego,* breach of contract and liability for certain forklift expense, the allegation immediately following to the effect that the books and records described in the application "constitute and contain evidence" material and relevant to said issues is merely a legal conclusion and opinion of petitioner's counsel (*McClatchy Newspapers* v. *Superior Court, supra,* 26 Cal.2d 386, 396) and is in no sense a factual and detailed statement of the materiality of the documents.

We have already set forth in full the next two paragraphs of the application. In summary they state that "some" of the books and documents are "material" to the *alter ego* issue and the "others" are "material" to the remaining two issues. The "some" are alleged (in the fist paragraph) to be material because they contain evidence of the structure, formation and operation of Maccon and Eustace's interest and participation therein. The "others" are alleged (in the second paragraph) merely to be material to the remaining issues and to contain evidence of the manner in which the parties carried out the agreement, as well as the names and addresses of potential witnesses.

A cursory reading of these two paragraphs makes manifest at once that petitioner makes no attempt to allege *which books*

and *records* are material to *which issues*. In reality, therefore, petitioner has not "set forth in full detail" (§ 1985) the facts showing how the books and documents are material to any given issue. As to the *alter ego* issue, we may assume that the articles of incorporation and bylaws, as well as amendments to both, will have some bearing on the structure and formation of Maccon, but what of the other multitudinous documents? Petitioner seems to us to assume that some of the books and documents will probably show some facts supportive of an *alter ego* theory but it cannot be said in the light of petitioner's application that they must necessarily do so. (See *McClatchy Newspapers* v. *Superior Court, supra,* 26 Cal.2d 386, 398.)

An analysis of the second paragraph dealing with "the other" books and documents leaves us even more in the dark. Distilling its allegations to their essence, this paragraph merely states that "the other" books and documents are material and contain evidence of the performance of the agreement. Nowhere does petitioner set forth the facts showing what specific books and documents, or even reasonable categories thereof, are material to the issues mentioned or how any of them are material to such issue or issues. This entire paragraph is nothing more nor less than a legal conclusion of petitioner's counsel.

Indeed even if we were examining petitioner's efforts to obtain production of Maccon's records as a procedure apart from the deposition and were considering it as having been made under section 2031, which prescribes a test of relevancy to the subject matter of the action, we would be of the opinion that petitioner's showing on such relevancy suffered from the same fundamental inadequacies. In such a procedure petitioner would also fail, for the reasons heretofore pointed out, because of the lack of specificity in its designation of the books and documents to be thus produced. (*West Pico Furniture Co.* v. *Superior Court, supra,* 56 Cal.2d 407, 419-420; see generally 2 DeMeo, *op. cit.,* § 10.10.) Under either procedure petitioner, in our view, on the basis of its present showing has not met its burden.

Undoubtedly much of petitioner's present plight could have been avoided if the court below had compelled Maccon to answer interrogatory 4 dealing with the description of the books and documents or if petitioner itself, when faced with this obstacle, had pursued the inquiry through the first deposition, instead of cancelling it. ▮ In any event, since it is ob-

vious that petitioner lacks sufficient information for a factual showing to secure production, it should take steps to secure it either by deposition (*McClatchy Newspapers* v. *Superior Court, supra,* 26 Cal.2d 386, 398; *Union Oil Co.* v. *Superior Court* (1957) 151 Cal.App.2d 286, 293 [311 P.2d 640]) or by written interrogatories (*West Pico Furniture Co.* v. *Superior Court, supra,* 56 Cal.2d 407, 416). The court below should take cognizance of these proper objectives.

We briefly note an additional requirement which appears not to have been considered at all in the trial court and was not argued by the parties here. As we have pointed out, section 1985, by amendment in 1961, imposes upon petitioner the requirement of *"showing good cause* for the production of the matters and things described in such subpoena" (italics added). Section 2036, added to the code in 1963, which received no mention below and was not cited by the parties here, provides that a "party required to show 'good cause' [petitioner here] . . . shall show *specific facts justifying discovery* and mere proof of the relevance of the information sought to the subject matter of the action shall not be sufficient." (Italics added.) ■■■ It is obvious from the fact that the requirement of showing good cause was added to section 1985 that it is a requirement in addition to and distinct from the requirement of showing materiality to the issues theretofore prescribed by the statute. The above provisions of section 2036 further confirms such a conclusion.

■■■ The burden of showing good cause for the inspection or production of documentary evidence is on the party seeking discovery. (§§ 1985, 2031, 2036; *Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 373-374, 378-379 [15 Cal.Rptr. 90, 364 P.2d 266]; *Suezaki* v. *Superior Court* (1962) 58 Cal.2d 166, 171 [23 Cal.Rptr. 368, 373 P.2d 432, 95 A.L.R.2d 1073]; *Beesley* v. *Superior Court* (1962) 58 Cal.2d 205, 207-209 [23 Cal.Rptr. 390, 373 P.2d 454].) The foregoing cases, all of which were decided prior to the enactment of section 2036 commented on the nature of the good cause requirement. *Greyhound* said "that the good cause which must be shown should be such that will satisfy an impartial tribunal that the request may be granted without abuse of the inherent rights of the adversary. There is no requirement, or necessity, for a further showing." (P. 388.) *Suezaki* quoted and relied upon the above excerpt from *Greyhound* observing there must be a showing "that inspection may be had without violence to equity, justice, or the inherent rights of the adver-

sary." (P. 172.) In *Beesley* the court concluded that since the party seeking inspection "showed sufficient facts to bring the desired inspection within the declared purposes of the discovery act, she sustained the burden of showing good cause." (58 Cal.2d 205, 209.) ▪▪▪ Whatever may be the philosophy of good cause as distilled from the above cases, we think that by mandate of section 2036 it must now be articulated in any given case by an affirmative showing of specific facts justifying discovery. What will constitute good cause will of course depend upon the facts and circumstances of the particular case.

Section 2036, subdivision (b) provides that the requisite showing and any showing in opposition thereto shall be made in the trial court. In the *Greyhound* case the court pointed out that the method of showing good cause is not prescribed by statute, that ordinarily it may be made by affidavits and where such affidavits are incomplete and even where they are not filed at all, "good cause may be found in the pleadings theretofore filed in the action." (56 Cal.2d at p. 389.)

In the instant case petitioner's application is devoid of any allegations directed to the requirement of good cause. Although petitioner incorporated therein by reference the "pleadings, records and files" in the action "specific facts justifying discovery" required by section 2036 do not appear therein and were not pointed out by petitioner in its application by appropriate allegation. Indeed this entire requirement of showing good cause in the light of section 2036, so far as the record before us discloses, seems to have received no mention in the court below. We mention this point so that petitioner will be aware of the requirement in future proceedings.

It is not necessary for us to discuss the requirement of possession of the books and documents sought to be produced. Apparently, though not expressly so, the subpoena was directed to Eustace as the custodian of the books and records which belong to Maccon.

▪▪▪ In view of our foregoing conclusions, we cannot say that the court abused its discretion in quashing the subpoena duces tecum. Nor can there be any doubt of the propriety of the court's action when it is considered as having been taken without prejudice to petitioner's right to seek a new subpoena less broad in scope.

Let a peremptory writ of mandate issue requiring respondent superior court to set aside its order denying further responses to interrogatories 4 and 5, to reconsider petitioner's

motion for further responses to said interrogatories and to make its order in reference thereto in accordance with the views herein expressed. To the extent that the petition seeks other relief herein, the alternative writ of mandate is discharged and the petition for a peremptory writ is denied.

Molinari, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied August 4, 1965.