[Civ. No. 47173. Second Dist.. Div. Two. Feb. 20. 1976.]

JAMES DALE BITTLE et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES
COUNTY, Respondent;
ROBERT STEVE ECHEVARRIA et al., Real Parties in Interest.

**COUNSEL**

A. V. Falcone and Falcone & Falcone for Petitioners.

No appearance for Respondent.

Alan I. Miller and John F. Cobb for Real Parties in Interest.

**OPINION**

**ROTH, P. J.**—On July 18, 1975, respondent court entered an order requiring Kathy Marie Bittle, one of petitioners herein, to appear for a physical examination as permitted by section 2032, subdivision (a), of the Code of Civil Procedure. The order had been requested by real parties in interest as a part of and ancillary to the preparation for trial of respondent court's case No. NCC 6264 in which petitioners James Dale Bittle and Kathy, husband and wife, are plaintiffs and Robert (a minor) and his parents Angel and Jean Echevarria are defendants and the real parties in interest in this proceeding.

On September 30, 1975, we denied without opinion petitioner's application for a writ of mandate and for an order to stay the physical

examination. Thereafter in a hearing granted by our Supreme Court on October 30, 1975, said court granted a stay of the trial court's order and the "matter" was "retransferred" to this court " . . . with directions to issue an alternative writ . . . ." (Citing *Harabedian* v. *Superior Court* (1961) 195 Cal.App.2d 26, 33 [15 Cal.Rptr. 420, 89 A.L.R.2d 994].) Pursuant to said directions we issued an alternative writ mandating respondent superior court to vacate the order or show cause why it should not be ordered to do so.

The complaint in action No. NCC 6264 was filed February 20, 1975, and alleges that the accident which caused the injuries for which petitioners as plaintiffs seek relief occurred on February 22, 1974. After stipulated extensions, the answer was filed on June 13, 1975. In the interim petitioner's counsel and an adjuster from the insurance company representing defendants [real parties in interest herein] attempted settlement. From the outset of the settlement negotiations the adjuster requested a physical examination of petitioner by a named doctor at a fixed time and place, surrender for inspection of existing X-rays and authorization to inspect or copy hospital records. Petitioners imposed conditions and as a consequence most of the four-month period was spent in an attempt to agree on the conditions. There was no agreement and negotiations were aborted.

Petitioners' complaint in NCC 6264 alleged: "she [Kathy] suffered and still suffers personal injuries, including whiplash of her neck and back; neck and back sprain; injury to her head, neck, throat, collar bone; shoulders, arms, hands, fingers, shoulder blades, legs, eyes; pains throughout her body, particularly in her head, neck, shoulders, back, arms, hands, fingers, shoulder blades, both legs, more intensely on the left, nervousness, blurring of vision, pains in her eyes, pain and alternate numbness of her left arm and hand and eyes; muscle cramps throughout her body, particularly in her neck, throat, shoulders, arms, hands, back, legs; difficulty in breathing, pains and pressure in her chest; twitching of her facial muscles; twitching of her eyes; headaches; sleeplessness; and *other personal injuries, the full nature and extent of which are not yet determined, all of the same requiring the care and treatment of physicians, physiotherapists, X-rays,* medicines and she was required to wear a cervical collar, to her damages in the sum of $100,000 for her presently known injuries plus additional amount for her presently unknown injuries which she may prove at the trial." [Italics added.]

On June 18, 1975, defendants filed a notice of motion for physical examination of plaintiff [Kathy] to be heard on July 18, 1975. On July 18, 1975, the motion was fully heard and the trial court issued the following minute order: "Motion granted. Plaintiff's attorney and reporter authorized to be present. Defendant shall not cause additional X-Rays to be taken until such time as the examining doctor has fully studied all X-Rays supplied by plaintiff's counsel and in this connection the plaintiff is ordered to make available to the defendant's doctor not less than 48 hours before the scheduled examination all X-Rays taken on behalf of the plaintiff, thereafter defendant's examining doctor is authorized to take such additional X-Rays as are reasonable and necessary to be determined by the doctor. Physical examination not to be given by defendant's doctor earlier than 30 days from this date. Defendant's examing [*sic*] physician is ordered to prepare a report of his examination in writing and supply to counsel for plaintiff pursuant to 2032(b) (1) C.C.P. Notice waived."

The notice of motion for the order stated that defendants sought "an oral and physical examination, including an x-ray examination, . . . respecting injuries alleged to have been incurred as a result of [the] accident . . . [complained of]." It was "based upon the grounds that defendants cannot safely proceed to trial on the issues . . . without having knowledge of the nature and extent of the alleged injuries . . . ." The notice requested respondent court to order the examination to be conducted "by and in the office of Dr. Peter M. Rocovich, 2010 Wilshire Boulevard, Los Angeles, California on July 31, 1975 at 9:30 a.m. . . ." Counsel's declaration attached to the notice of motion stated: Dr. Rocovich was a licensed physician and surgeon; without the physical examination it "would be impossible for defendants to rebut any expert testimony offered by the plaintiff should rebuttal thereto be in order," and that defendants were "without expert advice of information concerning the plaintiff's physical condition, or as to the probable cause of any abnormalities which may exist and [would] have none unless the requested physical examination is ordered."

Petitioners summarize their objections to the order as follows:

"The requested examination is unlimited. In fact the court on the hearing said, among other things, ' . . . and I am not going to circumscribe the examinations of the doctor by telling him that they cannot draw blood if they feel that that ·is necessary and adequate examination.' ·

"A cursory reading of the allegations of the complaint show that the physical injuries are within the whiplash category, which, generally, involves the neurological and orthopedic fields.

"If the real parties' doctor is to 'draw blood' then minimal due process requires that he first show good cause for it.

"What did the trial court have in mind, what can the real parties claim the right to have done to Kathy, and what will the real parties' doctor do?

"A spinal tap? A pantopaque myelogram? Both involve very serious risks and are not indicated. Kathy's doctors did not take any."

Before treating specific objections it should be noted that the petition for the writ before us stated in pertinent part: "Parties *are* entitled to *proper* physical examinations of opposing parties in *proper* cases on *proper* conditions and upon compliance with the legal requirement therefor. . . . The health and safety of the person to be examined are paramount factors."

The above admission is limited by the following caveats: "Medicine is not an exact science; examinations and diagnostic aids all involve, in variable degrees, risks to the examinee.

"X-rays are dangerous. Before they are taken, their need should be *competently* determined. When they have been taken, additional x-rays should not be taken except under unusual circumstances and after *demonstration* for their need.

". . . . . . . . . . . . . . . . . . .

"X-rays are merely diagnostic and often uncertain, misleading and even useless."

We turn now to petitioners' specific objections to the order, which are enumerated and answered as follows:

(1) Noncompliance with Code of Civil Procedure section 2032, subdivision (a), in that the order failed to "specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made." It is patent that the order does not state a specific time or place for the examination or the name of the

doctor who is to conduct the examination as provided in Code of Civil Procedure section 2032, subdivision (a). (*Harabedian* v. *Superior Court* (1961) 195 Cal.App.2d 26, 33 [15 Cal.Rptr. 420, 89 A.L.R.2d 994].) Rather, the order provides that the examination is "not to be given by defendant's doctor earlier than 30 days from this date [July 18, 1975]." However, unlike *Harabedian*, a written notice of motion for oral and physical examination was filed in the present case, setting forth each of the particulars required by section 2032, subdivision (a). The failure of the order to repeat all of such particulars does not, therefore, render the order defective per se. (*Union Trust Co.* v. *Superior Court* (1938) 11 Cal.2d 449, 456-457 [81 P.2d 150, 118 A.L.R. 259].) Further, wholly aside from the contents of the notice of motion, it is abundantly clear from the record that the order was phrased as quoted to accommodate petitioners' counsel who represented to respondent court that he had engagements prior to the July 31, 1975, date specified for the examination in the notice of motion, and that he desired to test the order by means of a writ petition. Petitioners may not now complain about a lack of specificity which resulted from their request and to which they did not object. Similarly, counsel made no argument that Dr. Rocovich, who was named in the notice of motion, was not duly licensed and reputably competent, or that the place fixed in the notice, 2010 Wilshire Boulevard, Los Angeles, California, was not a proper and convenient place, or that the time of the examination, 9:30 a.m. would work any hardship on petitioner. Counsel's argument in respondent court was limited to the inconvenience of the date of July 31, 1975, that no examination should be ordered because petitioner had stipulated to one on her own terms, and to the scope of the examination.

It is clear from the order and the notice of motion, that the scope of the examination is defined as a general oral and physical examination, including X-rays. The order does not call for extensive X-rays (as argued) and, indeed, places many conditions on the taking of X-rays. The complaint filed by petitioners alleges injuries with specificity to virtually every part of Kathy's body; alleges generally undetermined injuries, and that X-rays are required.

(2) Noncompliance with subparagraph C of respondent court's Policy on Discovery Matters, paragraph 281, which provides: "Extraordinary Tests. Applications to the Court for mental and physical examinations . . . should state whether any extraordinary tests or procedures are to be employed. For example, if an electroencephalogram or myelogram or extensive X-ray is anticipated, the Court and the party to be examined should be made aware of that fact."

Defendant's motion did not request and the order does not permit "an electroencephalogram or myelogram or extensive X-ray" as prohibited by paragraph 281(C) of the Policy on Discovery Matters, or a spinal tap or a pantopaque myelogram as feared by petitioners. In addition, to insure against any apprehended violation of the order, respondent court, at petitioners' request, provided in the order that a reporter and petitioners' counsel could be present at the examination.

(3) ■ Inadequate showing of good cause for the examination due to defendants' failure to state specific facts justifying the same and their failure to delineate "the precise physical examination requested." It is difficult to perceive how the notice of motion might have been more specific than it was, particularly since the notice necessarily incorporated petitioners' extremely broad allegations of Kathy's injuries, as set forth in the complaint.

(4) ■ Prematurity of the motion because petitioners had offered Kathy's authorizations to obtain copies of her medical records and defendants had neither accepted the authorizations nor inspected the records. The record before us indicates that, for reasons not altogether clear, counsel for both sides were unable to agree upon the conditions for inspection of such records. We cannot say that the court abused its discretion in rejecting petitioners' argument that an offer had been made to permit inspection in view of the very broad extent of Kathy's alleged specific injuries, the impasse over a period of months between petitioners and the insurance adjuster, followed by an impasse between respective counsel over inspection of the existing X-rays and medical records, and the obvious necessity to resolve the conflict by court order.

(5) ■ Failure of the order to forbid defendants' doctor to take any X-rays until after the examination, and until defendants made a separate motion for such X-rays upon a separate showing of good cause. Although we recognize as petitioners assert, that X-rays may be dangerous, we find no abuse of discretion by respondent court in rejecting this contention. The order does require defendants' doctor to "fully [study] all X-rays supplied by plaintiff's counsel" and thereafter to take only "such additional X-rays as are reasonable and necessary. . . ."

Obviously because of the stay order and our alternative writ, respondent court has been powerless to summon the parties before it to show cause why they have not agreed upon a date for the examination of petitioner Kathy and, in the absence of such agreement, to fix such a date.

We find that the order of respondent court was properly issued, but that the court's expectation that counsel, by implicit agreement made in open court, would fix a time and date for the examination convenient to both, has not been fulfilled. We therefore dismiss the petition, discharge the alternative writ, terminate the stay order upon the finality of this writ proceeding, and remand the matter to respondent court for such further proceedings as it may deem proper.

Fleming, J., and Beach, J., concurred.

Petitioners' application for a hearing by the Supreme Court was denied April 15, 1976.